Staunton.

MARTIN AND WHITE V. COMMONWEALTH.

September 17, 1919.

1   INTOXICATING LIQUORS—*Interstate Commerce—Employes on Dining Car—Case at Bar.*—The accused were employes on a dining car, part of an interstate train, running from New York City to Memphis, Tenn. While the train stopped for a few minutes in the city of Roanoke, Va., police officers boarded the train, arrested the accused while they were in the discharge of their duties upon the dining car, before either had left the train or indicated any purpose to do so, as they were going through the State of Virginia on the train in the performance of their duties. Upon a search of the car and of certain parts of it to which the accused had access, a quantity of liquor in excess of the amount then allowed by the Virginia statute was found, and its ownership admitted by accused.

   *Held:* That the convictions of accused could not be sustained.

2.  INTOXICATING LIQUORS—*Interstate Commerce—Acts of Congress.*—By the Wilson act (26 U. S. Stat. at L. 313, ch. 728; Compiled Stat., sec. 8738,, the Webb-Kenyon act (37 U. S. Stat. at L. 699, ch. 90; Compiled Stat., sec. 8739), and the Reed amendment (39 U. S. Stat. at L. 1069, c. 162; Compiled Stat. 1918, sec 8739a), Congress has withdrawn the protection of the commerce clause of the Constitution from intoxicating liquors which are transported in violation of the laws of a State into such State. None of these acts, however, contain any suggestion that a State law can operate upon intoxicating liquor as the subject of interstate commerce while being transported through such State. This doctrine was recognized by the legislature of Virginia in enacting the prohibition law. That act by express language and clear implication prohibits the introduction of liquor into the State, but does not prohibit its transportation through the State in interstate commerce.

3.  CRIMINAL LAW—*Evidence—Presumption of Innocence.*—In criminal prosecutions suspicion cannot be substituted for proof, and the rule is that all men are presumed to be innocent until their guilt has been established beyond a reasonable doubt.

4. INTERSTATE COMMERCE—*Employes as Passengers.*—Employes on a dining car on an interstate train passing through the State are passengers, and as the State laws could not operate upon liquor in the possession of a common carrier while being transported through the State, such employes are equally protected by the commerce clause of the Constitution, where there is no evidence of any use or distribution of liquor in their possession in the State of Virginia.

5. INTOXICATING LIQUORS—*Transportation—Interstate Commerce— Burden of Proof—Case at Bar.*—In the instant case where ardent spirits in excess of one quart were found in the possession of each of the accused, employes on a dining car passing through the State, the burden of proof was not on the accused to prove that they were on an interstate journey. If the Commonwealth had established a *prima facie* case against the accused, such burden would have been upon the accused, but the Commonwealth so far from having established a *prima facie* case, had proved facts from which but one fair inference could be drawn, and that was that the accused were upon an interstate journey, carrying the liquor with them.

Error to a judgment of the Corporation Court of city of Roanoke.

*Reversed.*

The opinion states the case.

*Hoge & Darnall* and *Hairston & Hairston,* for the plaintiff in error.

*Jno. R. Saunders, Attorney-General* and *J. D. Hank, Jr., Assistant Attorney-General,* for the Commonwealth.

PRENTIS, J., delivered the opinion of the court.

The accused were jointly indicted, tried, convicted and sentenced for violation of the prohibition law (Acts 1916, p. 215). The indictment was comprehensive, as is author-

ized under the Virginia statute, and charged them with the possession and transportation of intoxicating liquor in violation of the State law.

[1] There is no conflict in the testimony, and the facts shown are that the accused were both employes on a dining car, part of an interstate train, running from New York City to Memphis, Tennessee; that while this train stopped for a few minutes in the city of Roanoke, Virginia, the police officers boarded the train, arrested the accused while they were in the discharge of their duties upon said dining car, before either had left the train or indicated any purpose to do so; and that they were going through the State of Virginia on that train in the performance of their duties. Upon a search of the car and of certain parts of it to which the accused had access, a quantity of liquor in excess of the amount then allowed by the Virginia statute was found in their possession.

A mere statement of these facts seems sufficient to show, under the decisions of the Supreme Court of the United States, the final arbiter upon all questions involving interstate commerce, that these convictions cannot be sustained.

[2] It is claimed for the Commonwealth that while the general rule is that no State law can operate upon the subjects of interstate commerce, various acts of Congress have been adopted which remove the inhibition as to intoxicating liquors transported in interstate commerce, and authorize the enforcement of penalties imposed by State laws for illegal traffic in such liquor.

The first of these statutes, generally spoken of as the Wilson act, was passed following the decision in *Leisy* v. *Hardin,* 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128, in which the court held that ardent spirits, being recognized by the usages of the commercial world as property, and subjects of exchange, barter and traffic, that therefore no State could burden the interstate commerce in that com-

modity, and that, whether prohibited by the State law or not, the right of transportation of intoxicating liquors from one State to another, included the right of the consignee to sell such imported liquor in violation of State law in unbroken packages at the place where the transportation ended; and that it was only after the transportation was completed and the liquor was mingled with and become a part of the general property of the State, that State regulations with reference thereto could be enforced.

The Wilson act of August 8, 1890 (26 Stat. L. 313, Ch. 728; Comp. Stat. 1913, sec. 8738), subjected intoxicating liquors transported in interstate commerce to the exercise of the police power of the State, just as if it had been produced in such State, and whether introduced therein in original packages or otherwise. This act was construed in *Wilkerson* v. *Rahrer*, 140 U. S. 545, 11 Sup. Ct. 865, 35 L. Ed. 572, and in *Rhodes* v. *Iowa*, 170 U. S. 412, 18 Sup. Ct. 664, 42 L. Ed. 1088. The practical effect of this statute, as construed, was to allow persons to continue to receive intoxicating liquors from other States, notwithstanding the inhibitions of State laws, but prohibited the sale of such liquors, although in the original packages, contrary to such State laws.

Then, in further aid of the prohibition laws of the States, the Webb-Kenyon act of March 1, 1913, was passed. (37 Stat. L. 699, ch. 90; Comp. St. 1913, sec. 8739). This act prohibits the transportation of intoxicating liquors from one State into any other State, either in original packages or otherwise, in violation of any law of such State. This statute was reviewed and construed by the Supreme Court of the United States in *Adams Express Co.* v. *Kentucky,* 238 U. S. 190, 35 Cup. Ct. 824, 59 L. Ed. 1267, L. R. A. 1916C, 273, Ann. Cas. 1915D, 1167, and in *James Clark Distilling Co.* v. *Western Maryland Ry. Co.,* 242 U. S. 311, 37 Sup. Ct. 180, 61 L. Ed. 326, L. R. A. 1917B, 1218, Ann.

Cas. 1917B, 1845. Mr. Chief Justice White, in the last-named case, said that this act was intended simply to extend that which was done by the Wilson act—"that is to say, its purpose was to prevent the immunity characteristic of all interstate commerce from being used to permit the receipt of liquor through such commerce in States, contrary to their laws, and thus, in effect, afford a means by subterfuge and indirection to set such laws at naught." These acts provided that State laws should operate upon intoxicating liquors introduced into a State in violation of the State law, but it was still no violation of State or Federal law to transport such liquors through a State in interstate commerce.

Then what was known as the Reed amendment (39 Stat. L. 1069, ch. 162; Comp. Stat. 1918, sec. 8739-a) was adopted March 3, 1917, which imposes a penalty for ordering, purchasing or causing the transportation of intoxicating liquors in interstate commerce (except for scientific, sacramental, medicinal or mechanical purposes) into any State or territory which prohibits the manufacture or sale therein of intoxicating liquor, for beverage purposes. This latter act has been construed by the Supreme Court of the United States in two recent cases, *United States* v. *Dan Hill*, 248 U. S. 420, 39 Sup. Ct. 143, 63 L. Ed. 337, where it is decided that although the laws of the State of West Virginia expressly authorize the transportation and use of a limited quantity of liquor for beverage purposes, the transportation of any quantity of liquor into West Virginia in violation of the Reed amendment is punishable under that act; and in the case of *United States* v. *Gudger*, 249 U. S. 373, 39 Sup. Ct. 323, 63 L. Ed. 653, where it is decided that the Reed amendment, while it prohibits transportation of intoxicating liquor in interstate commerce "into" any State or territory, the laws of which prohibit the manufacture and sale of intoxicating liquors for beverage pur-

poses, does not prohibit the movement through such a State as a mere incident to the transportation into another State, whether such transportation be by personal carriage or by common carrier. In that case the conceded facts were that the accused was a passenger on a railroad train from Baltimore, Md., to Asheville, N. C., and that while the train was temporarily stopped at the station at Lynchburg, Virginia, he was arrested, his baggage examined, and it was found that he had in his possession seven quarts or more of whiskey; that he had no intention of leaving the train at Lynchburg or any other point in Virginia; and that his sole intention was to carry the liquor with him into the State of North Carolina, to be there used as a beverage. The charge in the indictment that the accused caused to be transported liquor to Lynchburg, in the State of Virginia, had no other foundation than the fact that he was arrested while the train was stopped at the railroad station at Lynchburg, Va., and while he was en route to Asheville, in the State of North Carolina. Upon this state of facts, the Supreme Court of the United States determined that the judgment of the trial court quashing the indictment was clearly right, because of opinion that there is no ground for holding that the prohibition of the statute against transporting liquor in interstate commerce into any State or territory the laws of which State or territory prohibit the manufacture, etc., includes the movement in interstate commerce through such a State to another. This is said by way of conclusion: "No elucidation of the text is needed to add cogency to this plain meaning, which would, however, be reinforced by the context if there were need to resort to it, since the context makes clear that the word 'into,' as used in the statute, refers to the State of destination, and not to the means by which that end is reached—the movement through one State as a mere incident of transportation to the State into which it is shipped. The sug-

gestion made in argument that, although the personal carriage of liquor through one State as a means of carrying it beyond into another State violates the statute, it does not necessarily follow that transportation by common carrier through a State for a like purpose would be such violation, because of the more facile opportunity in the one case than in the other for violating the law of the State through which the liquor is carried, is without merit. In last analysis it but invites, not a construction of the statute as enacted, but an enactment by construction of a new and different statute."

What the Congress has done then is to withdraw the protection of the commerce clause of the Constitution from intoxicating liquors which are transported in violation of the laws of the State into such State. None of these acts, however, contains any suggestion that a State law can operate upon intoxicating liquor as the subject of interstate commerce while being transported through such State. The purpose of the Congress is avowed and apparent, and that is to prevent the citizens of one State, under the cover of interstate commerce, from violating the prohibition laws of another State by the introduction of intoxicating liquors therein. There is no suggestion anywhere either in these statutes or decisions that a State can lawfully prohibit the transportation of intoxicating liquor through such State. The legislature of Virginia, in enacting the prohibition law, fully recognized this accepted doctrine, and has never claimed the right to prohibit such transportation through the State. The Virginia act by express language and clear implication prohibits the introduction of the liquor into the State, but does not prohibit its transportation through the State in interstate commerce.

[3, 4] Under the facts of this case then, unless suspicion is to be substituted for proof, and the rule that all men are presumed to be innocent until their guilt has been estab-

lished beyond a reasonable doubt is to be abrogated, it is clear that the Commonwealth has failed to establish the guilt of the accused. As employes on an interstate train passing through the State, they were passengers, and there is no indication in the evidence of any use or distribution of the liquor in the State of Virginia. It is not contended that the State laws could operate upon liquor in the possession of a common carrier while being transported through the State, and under the facts of this case these defendants are equally protected by the commerce clause of the Constitution. Under the decision in *United States* v. *Gudger, supra,* we are of opinion that the question is not an open one, for the State statute prohibiting the introduction of intoxicating liquor into the State in violation of its laws should receive the same construction as the like prohibition in language of similar import contained in the Reed amendment. At the time this alleged offense was committed, it was not a violation of either Federal or State law to transport intoxicating liquor through the State of Virginia in interstate commerce.

[5] It is contended that inasmuch as ardent spirits in excess of one quart were found in the possession of each of the accused, the burden was upon them to prove that they were on an interstate journey, and *Lucchesi* v. *Commonwealth,* 122 Va. 872, 94 S. E. 925, is cited to sustain this contention. A sufficient reply to this is that in the *Lucchesi Case* the Commonwealth proved that the accused had left the train in Richmond, where he resided, and was found in possession of a quantity of liquor in excess of that allowed by law. His defense was that he was on his way to his room, and that he intended to leave Richmond on an early train and thus to continue his journey to North Carolina. The Commonwealth, in that case, having established a *prima facie* case, it was properly said that the burden was upon the accused to prove his defense. In this case,

however, the Commonwealth had not proved a *prima facie* case; indeed, in our view of the evidence, it had proved facts from which but one fair inference could be drawn, and that is that the defendants were upon an interstate journey, carrying the liquor with them, and had violated no statute of Virginia.

Other questions are discussed in the briefs, but as they have been decided and sufficiently discussed in previous opinions of this court, we think it unnecessary to prolong this opinion by repeating what has been recently said in *Pine & Scott* v. *Commonwealth,* 121 Va. 812, 93 S. E. 652; *Pettus* v. *Commonwealth,* 123 Va. 806, 96 S. E. 161; *Sickel* v. *Commonwealth,* 124 Va. 823, 97 S. E. 783; *Burton* v. *Commonwealth,* 122 Va. 847, 94 S. E. 923.

*Reversed.*

Burks, J., concurring:

I did not hear the oral argument, but fully concur in the foregoing opinion.

Sims, J., dissenting:

The majority opinion deals with the case as if it were one merely of interstate transportation of liquor. It is upon this point that I am constrained to dissent.

The liquor was found and seized under search warrants regularly issued and executed in accordance with the prohibition act, hereinafter more particularly referred to. And the vital fact proved in the case by the Commonwealth is that the liquor in excess of the quantity allowed by law to be transported within the State was found in the possession of the accused within the State in a place other than the home of the accused. The liquor consisted of fifteen pints of whiskey belonging to the accused, Martin, and three quarts, two pints, and one pint bottle two-thirds

full belonging to the accused, White, and was found in the city of Roanoke on the "Memphis Special" train, in the dining car thereof, in places therein occupied by the accused respectively. The first-named liquor was in a grip, up on a pantry shelf covered by a coat belonging to Martin, who first denied that there was any whiskey on the car, but who after such liquor was found admitted that it was his. The other liquor was in a locker occupied by White on a high shelf in the pantry near the top of the car, and White admitted after the liquor was found that this liquor was his. Further: $49.00 was found upon the person of Martin, all consisting of one dollar bills, except three two-dollar bills; and $145.00 was found on the person of White, consisting of denominations of probably one twenty-dollar bill and of ten-, five-, and one-dollar bills, but mostly one-dollar bills.

Section 28 of the prohibition act of the State (Acts 1916, at p. 232), so far as material, provides as follows: "Whenever ardent spirits shall be seized in any room, * * * car or other place searched under the provisions of this act, the finding of such ardent spirits * * * in any such place shall be *prima facie* evidence of the unlawful selling, keeping and storing for sale, gift or use, by the person or persons occupying such premises * * * and the person in charge of the premises where such ardent spirits are found * * * shall be tried on the charge of selling, and keeping and storing for sale unlawfully such ardent spirits, under the indictment and form prescribed in section seven of this act * * *."

Section 65 of the same act, so far as material, provides as follows: "The possession by any person of any ardent spirits at any place other than his home, except as provided in this act, * * * shall, in any proceeding or prosecution under this act, be *prima facie* evidence that such person possesses such distilled liquors * * * for the purpose of sale * * *."

It will be observed that section 28 above quoted goes be-
yond section 65 also above quoted, in its effect, and makes
the finding of the liquor in such a place as it was found in
the case in judgment not merely *prima facie* evidence of
the purpose of sale of it, but such evidence of the *factum*
itself of the "unlawful selling, keeping and storing for sale,
gift or use by the person or persons occupying such prem-
ises" of such ardent spirits.

The indictment in the case in judgment is under section
28 and not section 65 aforesaid, and is in the form pre-
scribed by section 28 and charged the accused with the
said offenses mentioned in said section 28.

The verdict of the jury found both of the accused guilty
as charged in the indictment.

In view of the facts above mentioned, which were proved
by the Commonwealth, there can be no doubt that there
was ample evidence to sustain the verdict of the jury in
finding as they did, in effect, that the accused were guilty
of the "unlawful selling, keeping and storing for sale, gift
or use" of ardent spirits on said train in the city aforesaid
and within the State of Virginia, contrary to the provi-
sions of said statute; even if the accused had testified that
they had the liquor with them for the sole purpose of the
interstate transportation of it, or had offered or there had
been other evidence in the cause tending to rebut the *prima
facie* case to the contrary made against them by the evi-
dence for the Commonwealth as aforesaid. As a matter of
fact, however, neither of the accused testified in explanation
of their possession of the liquor aforesaid; and there was
no evidence in the case, or offered, even tending to show
that the accused were not guilty of the "unlawful selling,
keeping and storing for sale, gift or use" of the liquor as
aforesaid, except the sole circumstance that the accused
were themselves on an interstate journey. Now manifestly
the fact that the accused were themselves on an interstate

journey was not in itself conclusive of the fact that the liquor was on such a journey. It may or it may not have been. That was a question of fact for the jury upon all 'the evidence in the case when such evidence was weighed as prescribed by said statute. It was for the jury to say whether the *prima facie* case made by the evidence for the Commonwealth, as aforesaid, was rebutted by the mere fact that the accused were themselves on an interstate journey under the circumstances disclosed by the evidence. And under the statutory rule applicable to the evidence, as it must be regarded in this court after verdict, it is plain, as it seems to me, that the verdict aforesaid cannot be disturbed by us.

Of course, if there were no provisions of statute, such as that aforesaid, giving to the finding of the liquor, as aforesaid, the effect of the *prima facie* evidence aforesaid, the case would be different. But that statute is a police regulation and applies to all ardent spirits in excess of the quantity allowed by law to be carried with them by travelers, when seized and found within the State, as in the case in judgment. And the fact that one found in possession of the liquor so seized is himself on an interstate journey, is manifestly immaterial, if the liquor itself is not on such a journey. If the liquor is being sold, or kept or stored for sale, gift or use within the State, as the traveler passes through it, the interstate character of the journey of the traveler cannot be rightly held to exempt him from punishment for violation of the statute of the State prohibiting such sale, keeping and storing for sale, gift or use. Hence, the statute aforesaid applies the *prima facie* presumption aforesaid to the finding of the ardent spirits within the State under the circumstances aforesaid regardless of the nature of the journey of the person or persons in whose possession it may be found; and in such case, under the statute, the liquor is *prima facie* not on an interstate jour-

ney—the case is not *prima facie* one of the interstate trans-
portation of liquor—although the person found in possession
of it may himself be an interstate traveler.

And but slight reflection makes it apparent that a dif-
ferent holding, such as that of the majority opinion, must
result in nullifying the statute aforesaid to the extent of
rendering its provision as to *prima facie* evidence afore-
said inapplicable to all violators of the law who may adopt
the device of doing so as interstate travelers. All that such
an one need do is to become an interstate traveler, and he
will thereby become exempt from the rule of evidence afore-
said to which all intrastate travelers are amenable; and
he may sell, keep and store for sale, gift or use, ardent
spirits, as he passes through the State, and be exempt from
punishment, unless the Commonwealth should chance to be
able to produce evidence of an actual unlawful sale, gift
or use thereof. By such construction of the law interstate
travelers are put in a class by themselves, exempting them
from the operation of a very important and vital provision
of the State statute—so vital, indeed, that, as experience
has shown, the statute will be rendered practically nug-
atory as to such travelers. I cannot give my assent to such
a construction of the law. I am of opinion that under our
system of government interstate travelers are as much sub-
ject and amenable to all the police statutes of a State as
are intrastate travelers and citizens of the State; and there
is no decision of any of our courts, State or Federal, to the
contrary, of which I am aware, nor can be in accordance
with true legal principles.

In the case of *United States* v. *Gudger,* 249 U. S. 373, 39
Sup. Ct. 323, 63 L. Ed. 653, cited in the majority opinion
as controlling the case in judgment, the fact affirmatively
appeared on the trial that that was a case merely of inter-
state transportation of liquor—a case where the "sole in-
tention" (of the accused) "was to carry the liquor with

him" from without, thence, through the State of Virginia, into another State "to be there used as a beverage." That was the fact conclusively appearing against the Commonwealth in that case. If such had been the fact in the case in judgment, the *Gudger Case* would have been controlling of it, but not otherwise. And, as we have seen, such fact did not conclusively appear in the case in judgment. It was in issue before the jury and was found against the accused upon ample evidence to sustain the verdict.

I am, therefore, of opinion that there was no error in the refusal of the trial court to set aside the verdict, and on this point I am constrained to dissent from the majority opinion.