# 𝔖taunton

## EDDIE WILLIAMS V. COMMONWEALTH OF VIRGINIA.

September 23, 1937.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston
and Spratley, JJ.

The opinion states the case.

*Warren & Cantwell* and *Shelley B. Caveness,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Joseph L. Kelly, Jr., Special Assistant,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

Hubert Parker and Eddie Williams were charged with violating Code, section 4675 (49a), and convicted by the court without a jury. Their fines were fixed at $250. Since the trial Hubert Parker has died leaving Eddie Williams as the sole plaintiff in error.

There is no dispute about the facts. On April 8, 1936, the two defendants were arrested in their car as they approached the corporate limits of the city of Bristol, Virginia. They were directed to the police station in Bristol,

Virginia, where the car was searched and 840 pints of whiskey were found. It was seized and held as contraband whiskey. The bottles containing the whiskey had stamped upon them both Federal and Kentucky revenue stamps. The car carried North Carolina automobile tags and Parker produced the proper state registration card. He also produced a bill of sale for the whiskey at the time of the arrest. It disclosed that the whiskey had been sold in Corbin, Kentucky, by J. C. Lay Co., a wholesaler, to Hodgson Beverage Co., a retailer, of Baltimore, Md. The whiskey was being transported at the time of the arrest through Virginia in interstate commerce destined for Baltimore, Md.

The contract of sale for the whiskey was clearly established by the testimony of J. C. Lay, who represented the seller, and A. E. Hodgson, who represented the buyer. It was agreed that Parker would transport it in his car from Corbin, Kentucky, to Baltimore, Md. Williams, the plaintiff in error, was assisting Parker in the transportation of the whiskey and was driving the car when the arrest was made.

As stated, the warrant under which the defendants were tried, charged a violation of Code, section 4675 (49a), which section reads as follows: "The transportation of alcoholic beverages, other than wine and beer purchased from persons licensed to sell same in this State, and those alcoholic beverages which may be manufactured and sold without any license under the provisions of this act, within, into or through the State of Virginia in quantities in excess of one gallon is prohibited except in accordance with regulations adopted by the Virginia Alcoholic Beverage Control Board pursuant to this section.

"The board may adopt such regulations governing the transportation of alcoholic beverages, other than wine and beer purchased from persons licensed to sell same in this State and those alcoholic beverages which may be manufactured and sold without any license under the provisions of this act, within, into or through Virginia in quantities in excess of one gallon as it may deem necessary to confine such

transportation to legitimate purposes and may issue transportation permits in accordance with such regulations.

"Any person who shall transport alcoholic beverages, other than wine and beer purchased from persons licensed to sell the same in this State and those alcoholic beverages which may be manufactured and sold without any license under the provisions of this act, in excess of one gallon, in violation of such regulations shall be guilty of a misdemeanor and punished as provided in section 4675 (62)."

In accordance with the provisions of the act, the Virginia Alcoholic Beverage Control Board adopted the following regulation: "Regulations governing the transportation of alcoholic beverages as defined in the Virginia Alcoholic Beverage Control Act, as amended, within, into or through the State of Virginia in quantities in excess of one gallon.

\* \* \* \* \* \* \*

"IT IS ORDERED, That the following regulations governing the transportation of alcoholic beverages as defined in the Virginia Alcoholic Beverage Control Act as amended, within, into or through the State of Virginia in quantities in excess of one gallon, be, and the same are hereby adopted.

"I

"Before any person shall transport any alcoholic beverages within, into or through the State of Virginia, such person shall post with the Virginia Alcoholic Beverage Control Board a bond with approved surety payable to the Commonwealth of Virginia, in the penalty of one thousand dollars, upon condition that such person will not unlawfully transport and/or deliver any alcoholic beverages within or into the State of Virginia, and evidence that the required bond has been posted shall accompany the alcoholic beverages at all times during transportation."

While the warrant also charged a violation of Code, section 4675 (50), the accused were not found guilty of violating that section, and we, therefore, need not further notice it in connection with the case at bar.

The defendants, at the time of their arrest were engaged in a lawful enterprise unless the statute just quoted applied to the transportation of the whiskey. They contend that the statute can have no application to the transaction on account of its interstate character and if the statute is intended to apply here it would be void as an unwarranted State regulation of interstate commerce and a direct burden thereon.

The Attorney General concedes that but for the Twenty-First Amendment to the Federal Constitution, the shipment would have been exempt from the statute here sought to be invoked because the statute would have been unconstitutional, according to the great weight of authority. He says that since the amendment and by virtue of it the State can now regulate liquors being shipped in interstate commerce as has been attempted by the statute in question.

Our problem is to determine whether in the light of the Twenty-First Amendment the State of Virginia is still forbidden to regulate by statute the interstate shipment of liquor which is only transported through Virginia and which is not to be used or delivered in this State.

Of course, if Virginia has the power to regulate such shipments then every State through which they are carried would have the same power. If the regulatory statute here invoked is valid then it is conceivable that a shipment of whiskey from California to Maine might be subjected to the same regulation as it passed through each State if those States chose to enact similar statutes.

The act contemplates that transportation permits may be required for such shipments and under the regulation a bond of $1,000 is required, the condition of which is that the person transporting such liquor will not unlawfully transport or deliver it "within" or "into" Virginia. Under the act and the regulation the board may or may not issue the permit or it may accept or reject the bond. Refusal of the permit or rejection of the bond would render the transportation unlawful and, of course, directly burden interstate commerce.

By article I, section 8, clause 3, of the Federal Constitution, the Congress is granted express power "to regulate commerce with foreign nations, and among the several states, and with the Indian Tribes." Has that power been taken away from the Congress by the Twenty-First Amendment and returned to the States in regard to the regulation of the interstate liquor traffic?

The language of the amendment is as follows:

"Section 1. The eighteenth article of amendment to the Constitution of the United States is hereby repealed.

"Section 2. The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

It is observed that the amendment is entirely silent on the transportation of liquor "through" a state. The transportation that is prohibited is one into a state for "delivery or use" therein in violation of the laws of that State.

Adverting to the established facts in this case, the interstate shipment here involved was not to be delivered or used in Virginia in violation of Virginia law. It was only intended that it pass through this State.

The constitutional right and power to regulate commerce between the States has been held to be an exclusive right. This field is one which the States cannot invade. Legislation, therefore, regulating such commerce must properly come from the Congress. It has exercised the power conferred by the Constitution and legislated in this field on three different occasions regulating the interstate liquor traffic. The Wilson Act of August 8, 1890, 27 U. S. C. A., section 121 (26 Stat. 313, ch. 728; Comp. Stat. 1918, section 8738), according to *Martin* v. *Commonwealth,* 126 Va. 715, 100 S. E. 836, 837, "subjected intoxicating liquors transported in interstate commerce to the exercise of the police power of the State, just as if it had been produced in such State, and whether introduced therein in original packages or otherwise." It was then said: "This act was construed in *Wilkerson* v. *Rahrer,* 140 U. S. 545, 11 S. Ct.

865, 35 L. Ed. 572, and in *Rhodes* v. *Iowa,* 170 U. S. 412, 18 S. Ct. 664, 42 L. Ed. 1088. The practical effect of this statute, as construed, was to allow persons to continue to receive intoxicating liquors from other States, notwithstanding the inhibitions of State laws, but prohibited the sale of such liquors, although in the original packages, contrary to such State laws."

Later, on March 1, 1913, the Congress enacted the Webb-Kenyon Act, 27 U. S. C. A., section 122 and note (37 Stat. 699, ch. 90; Comp. Stat. 1918, section 8739). Judge Prentis, speaking for the court in the *Martin Case,* said of this act: "This act prohibits the transportation of intoxicating liquors from one State into any other State, either in original packages or otherwise, in violation of any law of such State. This statute was reviewed and construed by the Supreme Court of the United States in *Adams Express Co.* v. *Kentucky,* 238 U. S. 190, 35 S. Ct. 824, 59 L. Ed. 1267, L. R. A. 1916C, 273, Ann. Cas. 1915D, 1167, and in *James Clark Distilling Co.* v. *Western Maryland Ry. Co.,* 242 U. S. 311, 37 S. Ct. 180, 61 L. Ed. 326, L. R. A. 1917B, 1218, Ann. Cas. 1917B, 845. Mr. Chief Justice White, in the last-named case, said that this act was intended simply to extend that which was done by the Wilson act (27 U. S. C. A., section 121)—'that is to say, its purpose was to prevent the immunity characteristic of all interstate commerce from being used to permit the receipt of liquor through such commerce in States, contrary to their laws, and thus, in effect, afford a means by subterfuge and indirection to set such laws at naught.' These acts provided that State laws should operate upon intoxicating liquors introduced into a State in violation of the State law, but it was still no violation of State or Federal law to transport such liquors through a State in interstate commerce."

Still later, on March 3, 1917, the Congress again legislated on this subject, by what is known as the Reed Amendment (39 Stat. 1069, ch. 162; Comp. Stat. 1918, sec. 8739-a, see 27 U. S. C. A., section 1 note). In the *Martin Case,* Judge Prentis, commenting upon this act, said: "Then what was

known as the Reed Amendment * * * was adopted March 3, 1917, which imposes a penalty for ordering, purchasing or causing the transportation of intoxicating liquors in interstate commerce (except for scientific, sacramental, medicinal or mechanical purposes) into any State or territory which prohibits the manufacture or sale therein of intoxicating liquor, for beverage purposes. This latter act has been construed by the Supreme Court of the United States in two recent cases, *United States* v. *Dan Hill,* 248 U. S. 420, 39 S. Ct. 143, 63 L. Ed. 337, where it is decided that although the laws of the State of West Virginia expressly authorize the transportation and use of a limited quantity of liquor for beverage purposes, the transportation of any quantity of liquor into West Virginia in violation of the Reed Amendment is punishable under that act; and in the case of *United States* v. *Gudger,* 249 U. S. 373, 39 S. Ct. 323, 63 L. Ed. 653, where it is decided that the Reed Amendment, while it prohibits transportation of intoxicating liquor in interstate commerce 'into' any State or territory, the laws of which prohibit the manufacture and sale of intoxicating liquors for beverage purposes, does not prohibit the movement through such a State as a mere incident to the transportation into another State, whether such transportation be by personal carriage or by common carrier."

And in concluding, in the *Martin Case,* this was said: "What the Congress has done then is to withdraw the protection of the commerce clause of the Constitution from intoxicating liquors which are transported in violation of the laws of the State into such State. None of these acts, however, contains any suggestion that a State law can operate upon intoxicating liquor as the subject of interstate commerce while being transported through such State. The purpose of the Congress is avowed and apparent, and that is to prevent the citizens of one State, under the cover of interstate commerce, from violating the prohibition laws of another State by the introduction of intoxicating liquors therein. There is no suggestion anywhere either in these

statutes or decisions that a State can lawfully prohibit the transportation of intoxicating liquor through such State."

■ Unless the *Martin Case* has been changed by the Twenty-First Amendment, it is still the law in Virginia. As we have seen, the amendment, in effect, simply respects State laws which forbid the transportation of liquor for "delivery or use" in a State in violation of its laws by prohibiting its importation into such State. The amendment in substance is very similar to the Webb-Kenyon Act (27 U. S. C. A., section 122 and note). It not only defines a Federal offense but it recognizes the right of a State to legislate on the transportation of liquor in interstate commerce if it is to be delivered or used in such State.

In *State Board of Equalization of California* v. *Young's Market Co.* (1936) 299 U. S. 59, 57 S. Ct. 77, 78, 81 L. Ed. 38, it was held that the exaction by the State of a fee for the privilege of *importing* beer is not unconstitutional under the commerce clause solely by reason of the Twenty-First Amendment which prohibits the importation of intoxicants into a State in violation of its laws. Mr. Justice Brandeis speaking for the court said: "Prior to the Twenty-First Amendment it would obviously have been unconstitutional to have imposed any fee for that privilege. The imposition would have been void, not because it resulted in discrimination, but because the fee would be a direct burden on interstate commerce; and the commerce clause confers the right to import merchandise free into any State, except as Congress may otherwise provide. The exaction of a fee for the privilege of importation would not, before the Twenty-First Amendment, have been permissible even if the State had exacted an equal fee for the privilege of transporting domestic beer from its place of manufacture to the wholesaler's place of business. Compare *State Freight Tax Case*, 15 Wall. 232, 274, 277, 21 L. Ed. 146, 161, 162. Thus, the case does not present a question of discrimination prohibited by the commerce clause.

"The Amendment which 'prohibited' the 'transportation or importation' of intoxicating liquors into any state 'in

violation of the laws thereof,' abrogated the right to import free, so far as concerns intoxicating liquors."

This case is readily distinguishable from the one at bar. Here we are concerned with transportation through Virginia and not importation into it.

■ The immunity characteristics of interstate commerce regarding the importation of liquor into any State in violation of its laws have been abrogated by the amendment. It prohibits the importation of liquors into any State in violation of its laws and "abrogated the right to import free" such liquors. The amendment does no more than withdraw the protection of the commerce clause from liquor *imported* into a State in violation of its laws. It does not recognize any right in a State to enact a law which would operate upon liquor being shipped *through* such State.

It appears that the Congress surrendered to the States its exclusive right to control interstate commerce in intoxicating liquors to the extent defined in the Wilson and Webb-Kenyon Acts and the Reed amendment,— that is, to the extent that liquors were not to be shipped into a State for use therein in violation of State laws. By the repeal of the Eighteenth Amendment and the adoption of the Twenty-First, there has been constitutional recognition of the State's right to legislate, to a limited extent, in the interstate commerce field with respect to the importation of intoxicating liquors against the laws of the State. The former acts of Congress on this subject were thus substantially written into the Constitution by the Twenty-First Amendment. Therefore, it is clear that the exclusive right of the Congress to control interstate commerce has been qualified, and, insofar as the importation of liquors into a State against its laws is concerned, the Congress has in effect yielded the right to legislate, to that extent at least, to the States. *State Board of Equalization* v. *Young's Market Co., supra.*

■■ Our conclusion is that the principles enunciated in the case of *Martin* v. *Commonwealth, supra,* control here and that the Twenty-First Amendment has not, to any extent, impaired them. The provisions of the statute (Code,

section 4675(49a)) requiring transportation permits and the posting of a bond for interstate shipments of liquor, not to be delivered or used in Virginia, but only passing through this State in interstate commerce, destined for some other State, constitute direct burdens upon interstate commerce and are to that extent invalid. The failure of the plaintiff in error to have a transportation permit for his shipment and his failure to post the bond required did not constitute an infraction of any valid criminal law of the Commonwealth.

*Reversed and final judgment.*