# Richmond

BILL WHITAKER V. COMMONWEALTH OF VIRGINIA.

March 10, 1938.

Present, All the Justices.

The opinion states the case.

*G. R. Brittain* and *John W. Gillespie,* for the plaintiff in error.

*Abram P. Staples, Attorney-General, G. Stanley Clarke, Assistant Attorney-General,* and *Ralph H. Ferrell, Jr., Special Assistant,* for the Commonwealth.

GREGORY, J., delivered the opinion of the court.

Bill Whitaker obtained a writ of error to a judgment of conviction under Code, section 4675 (50), whereby he was sentenced to serve six months in jail and pay a fine of $250.

On March 18, 1937, police officers of Tazewell county, together with officers of the Virginia Alcoholic Beverage Control Board, investigated his premises under a search warrant and found twelve cases of whiskey stored in a Terraplane coupe. Ten cases were in the rear compartment, and two cases, from which fourteen or fifteen pints had been removed, were found behind the front seat. The whiskey bore

both federal and Kentucky stamps but there were no stamps indicating that it had been purchased from a Virginia Alcoholic Beverage Control store or a Virginia licensed druggist. The title to the car in which the whiskey was stored was in the name of William Whitaker and Fannie Jane Whitaker, who was either his wife or his daughter. The car was locked in a shed on Bill Whitaker's premises.

At first the accused refused to open the car. He denied that he owned it, but when the officers threatened to break the lock he sent to his filling station for the keys.

Whitaker had upon previous occasions violated the Virginia Alcoholic Beverage Control Act. On this occasion he told the officers that the whiskey was being transported from Kentucky to Florida; that he had the right to transport it and there was a permit on each case. At the time he made these statements, according to the testimony of Newt Harman who claimed to have actually transported the whiskey, the accused had no previous knowledge that the whiskey was stored in his (the accused's) car.

The accused seeks to escape the penalty of the statute by claiming that the whiskey was being transported in interstate commerce. He has no other defense and the entire evidence in his behalf consists of the testimony of his nephew, Newt Harman.

Newt Harman said that he purchased the whiskey in Kentucky for his Florida employer, and that he decided to visit relatives in War, West Virginia, before returning to Florida. He said that his car had been giving him trouble and upon reaching the accused's filling station he decided to leave the whiskey, go on to War, West Virginia, have his car overhauled and pick up the whiskey on his return the following day. He stated that he secured the keys to the automobile of the accused from the latter's filling station, and loaded the whiskey in the car, after first breaking open two cases and removing fourteen or fifteen pints which he took to friends in War, West Virginia. Upon his return to Whitaker's the next day, he found that the whiskey had been confiscated.

It is noteworthy that Newt Harman testified that the main reason for storing the whiskey in Whitaker's car was that the car which he had used to transport the whiskey from Kentucky needed overhauling and that he wanted to have it overhauled in War, West Virginia, but he returned from War the next day in the same car and failed to state whether he had actually had the car overhauled at War. The reasonable inference to be drawn from his testimony is that he did not have the car overhauled.

Another reason for his going to War, West Virginia, was to take his friends there fourteen or fifteen pints of whiskey as souvenirs, which he said belonged to his employer.

The bill of sale for the whiskey had been tampered with and erasures made. Newt Harman's name was signed to it but he denied that he had signed it. From the testimony of Newt Harman the conclusion is inescapable that the accused did not know that the whiskey had been stored in his car, yet the accused told the officers that it was being transported in interstate commerce under permits. It is obvious that he did know that the liquor had been stored in his car.

In our opinion the evidence amply discloses the guilt of the accused and abundantly supports the verdict and judgment of the trial court. No error was committed by that court in overruling the motion to strike the evidence.

It is vigorously urged that the instructions were not proper. Instruction A-1, given on behalf of the Commonwealth, is bitterly complained of. This instruction was based on Code, section 4675(50), which provides: "If any person, other than a common carrier, shall have, possess, keep, carry, ship or transport alcoholic beverages which shall have been illegally acquired by such person or any person for whom he is acting, he shall be guilty of a misdemeanor.

"Spirits in the possession of any person and in containers not bearing the required government stamps or seals shall be deemed prima facie evidence that such spirits were illegally acquired.

"Spirits in the possession of any person and in amounts in excess of one gallon, in containers not bearing stamps or

other evidence showing the same to have been purchased from the board or a druggist licensed to sell the same under the provisions of this act, shall be deemed for the purposes of this act to have been illegally acquired."

It is also urged that the amendment of instruction B-2 given on behalf of the accused was reversible error. That instruction with the amendment italicized follows:

"The Court instructs the jury that if you believe from the evidence in this case that Newt Harman had purchased the whiskey in Kentucky, and that he was in the act of transporting the same to the State of Florida, that it was left at William Whitaker's temporarily *without his consent*, and that it was the intention of Newt Harman to continue with the whiskey into the State of Florida, you must find for the defendant."

In addition to the foregoing instructions, the court instructed the jury that the fact that the accused failed to take the stand in his own behalf could not be taken against him and that the burden was upon the Commonwealth to prove the case beyond a reasonable doubt. The court also instructed the jury on the presumption of innocence and finally granted at the accused's request instruction B-4, which was in this language:

"The Court instructs the jury that if you believe from the evidence that Newt Harman at the time of the seizure of the whiskey here in question, had brought this whiskey to the home of William Whitaker and had put it in the car of the said William Whitaker, and that at the time the whiskey was seized, William Whitaker had no knowledge that the whiskey was on his premises, and that he had no control over or ownership in said whiskey, then you shall find for the defendant."

The interstate character of the shipment was one of the questions submitted to the jury. Instruction B-2 given for the accused properly submitted the question, and the amendment made by the court adding the words, "without his consent," was entirely proper. Certainly, if the liquor had been stored in his car with his consent, as the

evidence strongly tends to show, he could not have been entirely innocent. In addition to that, instruction B-4 asked for by the accused and given by the court without amendment cured the objection to instruction B-2, if the amendment was objectionable. The instruction B-4 told the jury, in effect, that if Whitaker had no knowledge that the whiskey was on his premises and if he had no control over, or ownership in it they should find him not guilty.

When all of the instructions are considered together they correctly expound the law applicable to the case. Instruction A-1 told the jury what constituted transportation and illegal possession of whiskey, and that if Whitaker possessed the whiskey in contravention of the statute he was guilty; but if the jury believed (instruction B-2) that Harman was transporting the whiskey from Kentucky to Florida and it was left temporarily at Whitaker's without his consent and that Harman intended to continue with the whiskey to Florida, then Whitaker was not guilty. And, again, if Whitaker (instruction B-4) had no control over or ownership in the whiskey he could not be found guilty. The instructions were clear, unambiguous and free of error.

But for the earnestness with which counsel contend that this whiskey was protected by the immunity afforded interstate shipments, we would not discuss the law pertaining to such shipments. Counsel assert that Code, section 4675(50), is unconstitutional and void for the sole reason that it constitutes an unreasonable regulation and burden upon interstate commerce. No other reason for its unconstitutionality is assigned.

As we have already seen, in the court below counsel for the accused, of his own volition, requested the court to grant instruction B-2. It was granted and it submitted to the jury the question of whether or not the shipment was interstate. After an adverse verdict, he now asks this court to declare, as a matter of law, that the shipment was interstate commerce and that the statute, section 4675(50), is a burden upon that commerce and therefore void.

The evidence clearly indicates that the accused is simply invoking the immunity from State regulation granted interstate commerce to cover his illegal possession of whiskey. It will be remembered that the whiskey was found in his garage, on his premises and locked in his car with the keys in his possession; that this was a violation of Code, section 4675(50); that he first denied that the car was his and then claimed that the liquor was being transported in interstate commerce. There was no evidence at the trial, other than that of Newt Harman, that the whiskey was being sent to Florida from Kentucky. The testimony of Harman was rejected by the jury. They were thoroughly warranted in disregarding his unusual and inconsistent testimony.

The case of *Williams* v. *Commonwealth*, 169 Va. 857, 192 S. E. 795, is relied upon. The facts in that case were that 840 pints of whiskey were being transported *through* Virginia in interstate commerce destined for Baltimore, Md. The shipment had not been stopped even temporarily when it was seized. It was held there that the State had no right to enact laws concerning liquor shipped *through* the State, and that the statute which required a permit of those transporting whiskey through a State, and the posting of a bond by them is invalid as a burden on interstate commerce. The case at bar is easily distinguished from that case upon the facts. Even if the shipment here in question were interstate originally, the interstate character was changed by the storing of the liquor in the car of the accused and breaking the original packages. When the cases were broken and fourteen or fifteen pints of whiskey removed and distributed, this destroyed the immunity if it had ever been an interstate shipment.

A few of the authorities touching the original package doctrine of interstate commerce are: *Brown* v. *Maryland* (1827), 12 Wheat. (U. S.) 419, 6 L. Ed. 678; Annotation in 26 A. L. R. 977; 11 American Jurisprudence, Commerce, section 61 and section 71; *Carson Petroleum Co.* v. *Vial*, 279 U. S. 95, 101, 49 S. Ct. 292, 293, 73 L. Ed. 626, 628;

and *Minnesota* v. *Blasius*, 290 U. S. 1, 54 S. Ct. 34, 78 L. Ed. 131.

■ The burden of showing that the whiskey was being transported in interstate commerce was upon the accused. He has signally failed to carry this burden.

The case of *Lucchesi* v. *Commonwealth*, 122 Va. 872, 94 S. E. 925, is nearest in point. There the accused was arrested in Richmond after he had alighted from an Atlantic Coast Line train from Washington, D. C. He had a suitcase in his hand which had liquor in it. He claimed that he was on his way to North Carolina and that he had stopped in Richmond temporarily to get his clothes and intended continuing to North Carolina early the next morning. Another reason given for stopping in Richmond was that the train he alighted from did not go to the place in North Carolina he desired to go. The court sustained a conviction of the accused. The issue of whether or not he was upon an interstate journey was one which he had the burden of proving before the jury and having failed to convince the jury that he was upon an interstate journey, the court refused to disturb the verdict.

The case of *Martin* v. *Commonwealth*, 126 Va. 715, 100 S. E. 836, has no application here.

The judgment is affirmed.

*Affirmed.*