COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Elder and Senior Judge Cole
Argued at Richmond, Virginia


ANTHONY NYANKUM SEKE

OPINION BY
v.          Record No. 0180-96-2      JUDGE LARRY G. ELDER
                                      MARCH 11, 1997
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Walter W. Stout, III, Judge


Suzanne L. Nyfeler (Joseph W. Kaestner;
Patricia A. Phillips; Kaestner & Pitney,
P.C., on briefs), for appellant.

Daniel J. Munroe, Assistant Attorney General
(James S. Gilmore, III, Attorney General, on
brief), for appellee.


Anthony Nyankum Seke (appellant) appeals his convictions of possession of a Schedule II controlled substance with the intent to distribute in violation of Code § 18.2-248 and of transportation of one or more ounces of cocaine into the Commonwealth with the intent to distribute in violation of Code § 18.2-248.01. He contends that the evidence was insufficient to support his convictions under both Code § 18.2-248 and Code § 18.2-248.01 because the Commonwealth failed to prove that he intended to distribute cocaine within the Commonwealth. He also contends that the evidence was insufficient to support his conviction under Code § 18.2-248.01 because the Commonwealth failed to prove that he transported cocaine "into" Virginia. For the reasons that follow, we affirm.

I.

FACTS

Appellant was charged with possession of a Schedule II controlled substance with the intent to distribute in violation of Code § 18.2-248 and of transportation of one or more ounces of cocaine into the Commonwealth with the intent to distribute in violation of Code § 18.2-248.01.

At trial, the evidence proved that in the early morning hours of June 23, 1995, appellant, a resident of North Carolina, was returning to North Carolina with a companion from a one day trip to New York City. Appellant was riding a Greyhound bus and was transporting 358.06 grams of crack cocaine that he had procured while in New York. Although appellant was bound for North Carolina, the bus he was riding made a temporary stop at the Greyhound bus station in Richmond, Virginia.

While the bus was stopped in Richmond, Special Agent Koushel and Trooper Newby of the Virginia State Police boarded the bus to question passengers in the hope of ferreting out drug couriers transporting illegal contraband. After a series of events not relevant to this appeal, Special Agent Koushel discovered appellant's crack cocaine on the bus, and another officer arrested appellant a short while later.

At the conclusion of the evidence, appellant moved to strike on the ground that the Commonwealth had failed to prove either that he intended to distribute the crack cocaine "inside"

Virginia or that he had transported it "into" Virginia.  No other issue was raised.  In particular, the issue of intent was raised solely with respect to its geographical limits and not with respect to the question of distribution.  The trial court denied his motion.  A jury found appellant guilty as charged.

## II.

### INTENT TO DISTRIBUTE

In a prosecution under Code § 18.2-248 or Code § 18.2-248.01, the Commonwealth must prove that a defendant either possessed or transported a controlled substance in Virginia with the "intent to . . . distribute."  Appellant contends that both statutes implicitly require the Commonwealth to prove that a defendant intended to distribute controlled substances <u>inside</u> the Commonwealth and that the evidence at trial did not prove that appellant had such an intent.  We disagree with appellant's construction of the statutes.

"When statutory construction is required we construe a statute to promote the end for which it was enacted, if such an interpretation can reasonably be made from the language used." <u>Woolfolk v. Commonwealth</u>, 18 Va. App. 840, 847, 447 S.E.2d 530, 533 (1994).  "While penal statutes must be strictly construed against the Commonwealth, 'the plain, obvious, and rational meaning of a statute is always preferred to any curious, narrow or strained construction; a statute should never be construed so that it leads to absurd results.'"  <u>Newton v. Commonwealth</u>, 21

Va. App. 86, 89, 462 S.E.2d 117, 119 (1995) (quoting Branch v. Commonwealth, 14 Va. App. 836, 839, 419 S.E.2d 422, 424 (1992)).

We hold that the phrase "intent to . . . distribute" in both Code § 18.2-248 and Code § 18.2-248.01 contains no geographic limitation and that the Commonwealth is not required to prove the place where a defendant intends to distribute illegal substances in order to obtain a conviction under either code section.  This conclusion is consistent with the plain meaning of both statutes.  The language of both Code § 18.2-248 and Code § 18.2-248.01 contains no express geographical limitation applicable to the intent element.  The plain and obvious meaning of both statutes is to prohibit the possession or transportation of illegal substances in Virginia by a person whose intent is to distribute them anywhere.[1]

Appellant argues that Virginia must be the intended place of distribution in a prosecution under these statutes because the criminal jurisdiction of the Commonwealth's courts is limited to

_____

[1] Courts construing the phrase "intent to distribute" in other jurisdictions have likewise held that the government is not required to prove the place of the defendant's intended distribution.  See United States v. Muench, 694 F.2d 28, 33 (2d Cir. 1982), cert. denied, 461 U.S. 908, 103 S. Ct. 1881, 76 L.Ed.2d 811 (1983) (holding that the Comprehensive Drug Abuse Prevention and Control Act prohibits possession of a controlled substance with the intent to distribute even if the defendant intends to distribute the substance in a foreign country); United States v. Gomez-Tostado, 597 F.2d 170, 172-73 (9th Cir. 1979) (same); State v. Bowers, 87 N.M. 74, 76, 529 P.2d 300, 302 (1974) (holding that state law prohibiting the possession of marijuana with the intent to distribute does not require the state to prove the place of the intended distribution).

–4–

crimes committed in Virginia.  We agree that the criminal jurisdiction of the Commonwealth is limited to crimes committed in the Commonwealth but disagree that such was not the case here.  The crimes proscribed by Code § 18.2-248 and Code § 18.2-248.01 are completed when illegal substances are either possessed or transported in Virginia by someone who has the intent to distribute them.  Although "'[e]very crime to be punished in Virginia must be committed in Virginia,'" Moreno v. Baskerville, 249 Va. 16, 18, 452 S.E.2d 653, 655 (1995) (quoting Farewell v. Commonwealth, 167 Va. 475, 479, 189 S.E. 321, 323 (1937)), the actual possession or transportation of controlled substances inside Virginia "supplies the jurisdictional nexus and obviates the need for proof of intent to distribute within [Virginia]." United States v. Muench, 694 F.2d 28, 33 (2d Cir. 1982).

In light of our construction of Code § 18.2-248 and Code § 18.2-248.01, we hold that the evidence was sufficient to prove that appellant intended to distribute cocaine.

III.

TRANSPORTATION "INTO" THE COMMONWEALTH

Appellant contends that the evidence was insufficient to support his conviction under Code § 18.2-248.01.  He asserts that Code § 18.2-248.01 requires the Commonwealth to prove that he intended to transport illegal substances to, and not merely through, the Commonwealth.  He argues that the evidence in this case only proved that he was transporting his crack cocaine

through the Commonwealth and into North Carolina.  We disagree
with appellant's reading of Code § 18.2-248.01.

We hold that the Commonwealth is not required to prove that
a defendant's intended final destination is Virginia in order to
obtain a conviction under Code § 18.2-248.01.  Instead, a
violation of Code § 18.2-248.01 is proved when a person enters
the Commonwealth while transporting any of the illegal substances
set forth in the statute.  This conclusion is consistent with the
plain meaning of the statute.  Code § 18.2-248.01 states that:

> Except as authorized in the Drug Control Act
> (§ 54.1-3400 et seq.) it is unlawful for any
> person to _transport_ by any means one ounce or
> more of cocaine, coca leaves or any salt,
> compound, derivative or preparation thereof
> as described in Schedule II of the Drug
> Control Act or any other Schedule I or II
> controlled substance or five or more pounds
> of marijuana _into the Commonwealth_ with
> intent to sell or distribute such substance.

(Emphasis added).  The word "into" is commonly defined as "a
function word primarily denoting motion so directed as to
terminate, if continued, when the position denoted by _in_ has been
reached."  _Webster's Third New International Dictionary_ 1184
(1981).  _Webster's_ also states that "into" usually follows:

> a verb that carries the idea of motion or a
> word implying or suggesting motion or passage
> _to indicate a place or thing entered or_
> _penetrated . . . by movement from the_
> _outside_.

_Id._ (emphasis added).  Thus, a violation of Code § 18.2-248.01
occurs at the moment a person transporting illegal substances

penetrates the borders of the Commonwealth.  A violation of the statute does not depend upon the transporter's intended final destination.

We disagree with appellant's contention that this construction of Code § 18.2-248.01 places the statute in violation of the Commerce Clause of the United States Constitution.  The Commerce Clause empowers Congress "[t]o regulate Commerce with foreign Nations, and among the several states and with the Indian Tribes."  U.S. Const. art. I, § 8, cl. 3.  "Although the Clause thus speaks in terms of powers bestowed upon Congress, . . . it also limits the power of the States to erect barriers against interstate trade."  Lewis v. BT Investment Managers, Inc., 447 U.S. 27, 35, 100 S. Ct. 2009, 2015, 64 L.Ed.2d 702 (1980).  The basic purpose of this "dormant" aspect of the Commerce Clause is to prevent states from enacting protectionist measures intended to shield local industry from interstate competition.  See City of Philadelphia v. New Jersey, 437 U.S. 617, 623-24, 98 S. Ct. 2531, 2535, 57 L.Ed.2d 475 (1978).  However,

> [t]he limitation imposed by the Commerce Clause on state regulatory power "is by no means absolute," and "the States retain authority under their general police powers to regulate matters of 'legitimate local concern,' even though interstate commerce may be affected."

Maine v. Taylor, 477 U.S. 131, 138, 106 S. Ct. 2440, 2447, 91 L.Ed.2d 110 (1986) (quoting Lewis, 447 U.S. at 36, 100 S. Ct. at

2015).

The United States Supreme Court has set forth the methodology for scrutinizing state laws that impact interstate commerce:

> In determining whether a State has overstepped its role in regulating interstate commerce, this Court has distinguished between state statutes that burden interstate transactions only incidently, and those that affirmatively discriminate against such transactions. While statutes in the first group violate the Commerce Clause only if the burdens they impose on interstate trade are "clearly excessive in relation to the putative local benefits," Pike v. Bruce Church, Inc., 397 U.S. 137, 142, 90 S. Ct. 844, 847, 25 L.Ed.2d 174 (1970), statutes in the second group are subject to more demanding scrutiny. . . . [O]nce a state law is shown to discriminate against interstate commerce "either on its face or in practical effect," the burden falls on the State to demonstrate both that the statute "serves a legitimate local purpose," and that this purpose could not be served as well by available nondiscriminatory means.

Taylor, 477 U.S. at 138, 106 S. Ct. at 2447 (citations omitted).

We hold that Code § 18.2-248.01 does not violate the Commerce Clause by prohibiting the transportation of certain controlled substances either into or through the Commonwealth. The statute is of the first class of laws referred to in Taylor because it does not discriminate against interstate commerce. Although the statute is facially limited to the shipment of drugs originating from outside the Commonwealth, laws prohibiting the

possession of controlled substances effectively prohibit their transportation wholly within the Commonwealth as well.  See Code § 18.2-248, § 18.2-250.

Moreover, Code § 18.2-248.01 serves a legitimate local purpose and does not place a "clearly excessive" burden on interstate commerce.  Pursuant to its police power to protect the public health and welfare, a state has the power to regulate and control the sale, use, and traffic of habit-forming drugs.  See Robinson v. California, 370 U.S. 660, 664, 82 S. Ct. 1417, 1419, 8 L.Ed.2d 758 (1962) (citing Whipple v. Martinson, 256 U.S. 41, 45, 41 S. Ct. 425, 426, 65 L.Ed. 819 (1921)).  State regulation of habit-forming drugs may take "a variety of valid forms," including the establishment of criminal penalties for the unauthorized manufacture, sale, or possession of such drugs.  See Robinson, 370 U.S. at 664-65, 82 S. Ct. at 1419-20.  The burden on interstate commerce is not excessive because the statute is narrowly drawn to limit its impact on legitimate commerce.  The type of goods affected by Code § 18.2-248.01 is expressly restricted to the specific controlled substances listed in the statute.  In addition, the statute does not interfere with the lawful transportation of these substances that is authorized by the Virginia Drug Control Act.  See Code § 54.1-3415 (authorizing a permitted manufacturer or wholesaler to distribute Schedule II drugs, including cocaine, to specified individuals pursuant to an "official written order"); see also State v. Dunn, 803 P.2d 917,

920 (Ariz. App. 1990), cert. denied, 502 U.S. 827, 112 S. Ct. 94, 116 L.Ed.2d 66 (1991) (holding that a state law prohibiting the importation of narcotics does not violate the Commerce Clause); Guam v. Salas, No. 82-0061A, 1983 WL 29951, at *5 (D.Guam App. Div. 1983) (same).

Appellant relies primarily on Williams v. Commonwealth to support his argument that Code § 18.2-248.01 violates the Commerce Clause. 169 Va. 857, 192 S.E. 795 (1937). In Williams, the Virginia Supreme Court held that state regulations requiring transporters of alcohol to obtain a permit and to post a bond before traveling through the Commonwealth violated the Commerce Clause. Id. at 866-67, 192 S.E. at 799. However, subsequent to Williams, the United States Supreme Court held that similar regulations in other states did not violate the Commerce Clause. See Ziffirn, Inc. v. Reeves, 308 U.S. 132, 139-41, 60 S. Ct. 163, 167-68, 84 L.Ed. 128 (1939); Duckworth v. Arkansas, 314 U.S. 390, 393, 62 S. Ct. 311, 312-13, 86 L.Ed. 261 (1941). In light of these decisions, the Virginia Supreme Court explicitly overruled Williams in 1943. See Dickerson v. Commonwealth, 181 Va. 313, 330, 24 S.E.2d 550, 558 (1943), judgment aff'd by Carter v. Commonwealth, 321 U.S. 131, 64 S. Ct. 464, 80 L.Ed. 605 (1944).

For the foregoing reasons, we affirm appellant's convictions of possession of a Schedule II controlled substance with the intent to distribute in violation of Code § 18.2-248 and of

transportation of one or more ounces of cocaine into the Commonwealth with the intent to distribute in violation of Code § 18.2-248.01.

<u>Affirmed</u>.