## Richmond

JAMES ALBERT CRISMAN AND CLEO CLAYDEN CRISMAN v. COMMON-
WEALTH OF VIRGINIA.

June 13, 1955.

Record No. 4374.

Present, All the Justices.

The opinion states the case.

*W. A. Hall, Jr.,* for the plaintiffs in error.

*J. Lindsay Almond, Jr., Attorney General* and *R. D. McIlwaine,
III, Assistant Attorney General,* for the Commonwealth.

WHITTLE, J., delivered the opinion of the court.

James Albert Crisman and Cleo Clayden Crisman were jointly

indicted for the unlawful and felonious possession of a narcotic drug (heroin), in violation of § 54-488 of the Code of Virginia, 1950, as amended. Upon arraignment both defendants entered pleas of not guilty and upon their motion and with the consent of the attorney for the Commonwealth, they were tried by the Judge without the intervention of a jury. Both defendants were found guilty and their punishment fixed at confinement in the penitentiary for a period of three years. From this judgment we granted a writ of error.

Four assignments of error are relied upon, but in our view of the case it is only necessary to consider the first assignment which poses the question: Was the evidence sufficient to sustain the convictions? ■ When the sufficiency of the evidence is challenged after conviction it is our duty to view it in the light most favorable to the Commonwealth, granting all reasonable inferences fairly deducible therefrom. The judgment should be affirmed unless "it appears from the evidence that such judgment is plainly wrong or without evidence to support it". § 8-491, Code, 1950; *Toler* v. *Commonwealth*, 188 Va. 774, 781, 51 S. E. (2d) 210, 213; *Wright* v. *Commonwealth*, 196 Va. 132, 137, 82 S. E. (2d) 603, 606.

■ The evidence before us in narrative form, viewed in the required light, discloses that on the morning of October 26, 1954, Officer George Murphy, an investigator of the Norfolk county police department, had under surveillance a certain house located in Norfolk county. He saw an automobile stop in front of the house and the two defendants emerge therefrom and approach the front door. Later the defendants went to the rear and entered the premises. Some time thereafter they left the house and reentered the automobile and drove off.

After the car had proceeded for about two blocks it was stopped by Murphy who found three negroes in the front seat and the defendants, who were white, in the rear seat. Murphy summoned Sergeant Towe of the Norfolk city police and upon his arrival the occupants were removed from the car and searched. No illegal article was found on the person of any of them. Thereafter Sergeant Towe searched the automobile and discovered "a small quantity of white powder on the floor in front of the rear seat". This powder (which was exhibited before us) was collected on paper and turned over to a chemist for the police department. The chemist testified that his analysis of the powder revealed that it

contained .2364 grains of heroin, a derivative of opium.

Andrew Peartree and Melvin L. Slade, two of the negroes oc-cupying the front seat of the automobile, testified that the defendants had asked them for a ride from the Newport News-Norfolk ferry into the city of Norfolk; that at the defendants' request they had driven to the house in question; that they had never been there before; that upon arrival the defendants entered the premises, and later returning to the automobile the journey was continued only a short distance when Officer Murphy stopped the car.

Both Peartree and Slade testified that they had no knowledge of any narcotics. Slade stated that he was the owner of the automobile; that he lived in Newport News and was employed at the Southland hotel in Norfolk; that Peartree and one Robert Lee Branch (who did not testify as his whereabouts at the time of trial could not be ascertained) were on their way to the hotel with him to seek em-ployment; that he, Peartree, and Branch, were in the front seat of the car and the defendants were riding in the back seat. He further testified that he had washed the car earlier that day and that the floor in the rear was very wet; that he had seen no powder in the rear of the car at the time it was washed and that he knew of no one except the defendants who had been in the back seat of the car since the washing.

James Albert Crisman testified that he and his brother, Cleo Clay-den Crisman, were merchant seamen; that on the morning in ques-tion they were proceeding from Newport News to Norfolk to obtain employment; that they had asked the driver of the car for a ride and had further requested him to go by the house in question so that they might borrow some money from an acquaintance; that upon arriving at the house, finding the front door locked, they en-tered by the rear door. He further testified that the landlady informed him that their friend was out but was expected to return shortly; that they waited in vain for some 20 minutes and then re-turned to the car which was subsequently stopped by Officer Murphy; that Sergeant Towe later showed them the powder mixed with dirt and they both denied any knowledge concerning it.

On cross examination James Albert Crisman was asked whether he had previously been convicted of a felony and he replied that he had been convicted of the possession of narcotics in California some years earlier. The objection and exception to the admissibility of this evidence need not here be considered.

The indictment charged that both defendants "unlawfully and feloniously did possess and have in their control a narcotic drug * * *." It is argued by the Commonwealth that in the light of the fact that *both* defendants went to the house "suspected of illegal activities", it would not "have been at all unreasonable" for the Judge "to have concluded that they went to the house for the purpose of securing the illegal narcotics". Such a conclusion would be mere speculation. The suspected house was never searched by the officers and no occupant thereof was called to testify. We are merely told that the house "was under surveillance by Officer Murphy".

There were five men in the automobile, any one of whom could have dropped the heroin on the floor. Or it could have been placed there by some unknown party. There is no proof of the ownership of the powder or who placed it on the floor of the car.

The Commonwealth argues that the powder was evidently placed on the floor when Officer Murphy signalled for the car to stop, and that it would be unreasonable to assume that the occupants of the front seat would have dropped the powder in the back of the car in plain view of the defendants. It appears equally unreasonable to assume that the occupants of the rear seat would have deposited the drug immediately under their feet rather than spill it to the winds through the car window. There was no evidence of the finding of any container in which the drug might have been stored. Sergeant Towe stated that "a small quantity of white powder (was found) on the floor of the rear of the said automobile". Who put it there or who had possession of it before it was placed on the floor we do not know. The conclusion that the defendants, or either of them, possessed the drug is speculation rather than proof.

We said in *Spratley* v. *Commonwealth*, 154 Va. 854, 860, 152 S. E. 362:

"The mere presence of a person in an automobile in which intoxicating liquor is being transported, with or without his knowledge, which is not shown to be owned by him or under his possession or control, single or joint, is not a crime; nor is it made by the statutes of Virginia *prima facie* evidence of his transportation of or aiding or abetting the transportation of the intoxicating liquor in the automobile; nor is it alone sufficient to sustain a conviction of him upon a charge of transporting intoxicating liquor." See also

*Worsham* v. *Commonwealth*, 184 Va. 192, 195, 34 S. E. (2d) 234, 235.

"* * * (I)t is required under our system of law that before life or liberty is exacted the evidence shall leave no reasonable doubt of the defendant's guilt." *Smith* v. *Commonwealth*, 192 Va. 453, 462, 65 S. E. (2d) 528, 534.

"* * * (C)ircumstances of suspicion, no matter how grave or strong, are not proof of guilt sufficient to support a verdict of guilty. The actual commission of the crime by the accused must be shown by evidence beyond a reasonable doubt to sustain his conviction." *Powers* v. *Commonwealth*, 182 Va. 669, 676, 30 S. E. (2d) 22, 25.

It cannot fairly be said from the evidence in the instant case that the defendants had possession of the heroin found on the floor of the automobile.

It is possible, or it may be probable, that both of these defendants are guilty, or that one or the other of them is guilty; but we are unable to find in the record sufficient evidence to warrant that conclusion beyond a reasonable doubt.

For the reasons stated the judgment of conviction is reversed, the verdict set aside, and the case remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*