COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Benton, Elder,
        Annunziata, Bumgardner, Frank, Humphreys, Clements,
        Felton and Kelsey
Argued at Richmond, Virginia


DEMETRIUS KELLY
                                        OPINION BY
v.   Record No. 3100-01-1        JUDGE ROBERT J. HUMPHREYS
                                        AUGUST 5, 2003
COMMONWEALTH OF VIRGINIA


                   UPON A REHEARING EN BANC

          FROM THE CIRCUIT COURT OF ACCOMACK COUNTY
                   Glen A. Tyler, Judge

          William L. Taliaferro, Jr. (Swartz,
          Rabinowitz, Taliaferro, Lewis, Swartz &
          Goodove, on brief), for appellant.

          John H. McLees, Senior Assistant Attorney
          General (Jerry W. Kilgore, Attorney General,
          on brief), for appellee.


     This matter comes before the Court on a rehearing en banc

from an unpublished panel decision rendered January 21, 2003.  See

Kelly v. Commonwealth, 03 Vap UNP 3100011 (2003).  In that

decision, a divided panel of this Court affirmed Kelly's

conviction for possession of marijuana with intent to distribute

(in violation of Code § 18.2-248.1), but reversed his conviction

for importing narcotics into Virginia with intent to distribute

(in violation of Code § 18.2-248.01), finding the evidence

insufficient, as a matter of law, to support that conviction.  By

order dated February 21, 2003, we granted the Commonwealth's

petition for a rehearing en banc, stayed the mandate of that decision, and reinstated the appeal.  Upon rehearing en banc, we affirm the judgment of the trial court as to both convictions.

## I.  Background

When the sufficiency of the evidence is challenged on appeal, we review the evidence "in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom."  Bright v. Commonwealth, 4 Va. App. 248, 250, 356 S.E.2d 443, 444 (1987).  "'In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.'"  Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998) (quoting Cirios v. Commonwealth, 7 Va. App. 292, 295, 373 S.E.2d 164, 165 (1988)).

So viewed, the evidence proved that on March 14, 2000, State Trooper William Talbert stopped the car Kelly was driving for having unapproved tinting on its windows.  Kelly was driving southbound on Route 13 in Accomack County.  Talbert approached the driver's side of the car and asked Kelly for his identification.  The officer testified Kelly appeared nervous and that his hands shook.  Talbert detected the odors of both burnt and "green" marijuana.

Kelly's license bore a Norfolk address.  Talbert asked Kelly "where are you coming from?"  Kelly twice told the officer

- 2 -

that he and his passenger, Joey Knight, had been in Maryland. Kelly stated he was not sure where in Maryland he had been, and told Trooper Talbert that he would have to ask Knight about that.

Because he had smelled "burnt marijuana in the car and green marijuana," Talbert told Kelly he was going to "search him and his car and also [Knight] . . . ."  Talbert then searched Kelly's car.

> In the front [Talbert] could kind of smell burnt and greenish marijuana a little bit and then [Talbert] observed what [he] believed to be marijuana flakes and buds in the front seat – left front seat right quarter and between the front left and right bucket seats around the console carpet area seeds and buds of marijuana in the carpeting and [he] looked underneath and [he] could smell kind of a greenish tinge of marijuana heavier like underneath on the floor board like under the seats and so forth. [Talbert] went to the back seat and pulled . . . down the rear seat compartment. Not all the way back in the cargo area. [Talbert] pushed the button down and pulled the rear seat forward.  The back of it folded down and there was a black duffel bag behind the back seat in the cargo area of the vehicle.
>
> *    *    *    *    *    *    *
>
> [Talbert] unzipped it and [he] saw several looked [sic] like up to six cellophane wrapped [sic] heavily wrapped – you couldn't tell what was in it – packages of what [Talbert] assumed to be drugs . . . .

At that point, Talbert told Kelly he was under arrest for "trafficking cocaine." Kelly looked "extremely surprised" and stated, "Cocaine?"

Talbert transported the two men to the police station. As he placed the duffel bag on a table and began to take out the heavily wrapped bags, Kelly exclaimed, "Man, that ain't my weed." Talbert testified he did not know the contents of the bag until he cut through the cellophane, that Kelly was not in a position where he could observe the contents of the bag, and had not been told the bag contained marijuana.

The officers later determined the bag contained twenty pounds and five ounces of marijuana. Talbert testified that amount of marijuana was inconsistent with personal use.

Kelly testified on his own behalf. He stated that he had met "up" with Knight that morning to go to Maryland to "see two strippers [Knight] had met the previous week." He claimed that when he arrived at Knight's home that morning, Knight asked if he could use Kelly's car to go to the store. Kelly stated that he agreed, and waited at Knight's home until he returned, about fifteen to twenty minutes later.

Kelly testified that the two men left for Maryland at about 11:30 a.m. Kelly claimed that on their way there, they had veered off of Route 13 to make a stop at a "Stuckey's" restaurant to get "[s]oda, chips and . . . a lottery ticket." When they left Stuckey's and returned to Route 13, Kelly made a

- 4 -

wrong turn, causing the car to travel toward Norfolk and away from Maryland. Kelly stated that it was at that time that he was stopped by Trooper Talbert.

Kelly agreed that Trooper Talbert asked him "where [he] was coming from," but then quickly changed his mind and testified that Trooper Talbert asked him "where he was going to." Kelly claimed that he told Trooper Talbert he was going to Maryland. He further claimed that he had never been to Maryland, and denied having any knowledge that the black bag was in his car, or that marijuana was in his car. He testified that when he was at the police station and stated "that ain't my weed," the contents of the bag were laid out on the table, "in plain view."

The trial court ruled as follows:

> In this case the facts are in some respects in dispute. The court finds that [Kelly] was on U.S. Route 13; that he stopped at Stuckey's roadside commercial establishment; that he then proceeded south on U.S. Route 13 towards Norfolk away from Maryland when the trooper stopped him proceeding in that direction. He did not tell the trooper that he was headed in the wrong direction. There is no evidence that emanates from that particular time to indicate that he was going in a wrong direction. He told the trooper on two separate occasions that he was coming from Maryland. There is no evidence to indicate at all that he was doing otherwise. There is no evidence to indicate that he had stopped anywhere other than in Accomack County after coming to Maryland. The evidence is clear that [Kelly] was coming from Maryland.

- 5 -

The court further found that the evidence clearly established "[Kelly] did know what was in those packages and he said that weed is not mine." Therefore, the trial court found Kelly "guilty as charged on both counts."

## II. Analysis

On appeal, Kelly contends the trial court erred in finding the evidence sufficient, as a matter of law, to prove that he transported the drugs into the Commonwealth and/or to prove that he possessed the drugs. We disagree.

When considering on appeal the sufficiency of the evidence presented below, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc). Thus, we do not "substitute our judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to

- 6 -

weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

As Kelly accurately points out, in circumstantial evidence cases, the reasonable doubt standard requires proof "sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). However, "[t]here is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence. The finder of fact is entitled to consider all of the evidence, without distinction, in reaching its determination." Commonwealth v. Hudson, 265 Va. 505, 512-13, 578 S.E.2d 781, 785 (2003). Moreover, this principle, "does not add to the burden of proof placed upon the Commonwealth in a criminal case. The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Id. at 513, 578 S.E.2d at 785 (citation omitted).

In regard to Kelly's first contention, Code § 18.2-248.01 provides, in pertinent part, that "it is unlawful for any person to transport into the Commonwealth by any means with intent to sell or distribute . . . five or more pounds of marijuana." "[A] violation of Code § 18.2-248.01 occurs at the moment a person transporting illegal substances penetrates the borders of the

Commonwealth." Seke v. Commonwealth, 24 Va. App. 318, 325, 482 S.E.2d 88, 91 (1997).

It is undisputed that Kelly was transporting illegal drugs in his car when he was stopped by Trooper Talbert. It is further undisputed that, at the time he was stopped by Trooper Talbert, Kelly was traveling southbound on Route 13 in Virginia, away from Maryland and toward Norfolk. Moreover, viewed in the light most favorable to the Commonwealth, the evidence presented below demonstrated that the odor of both burnt and green marijuana emanated from the car and that, upon questioning by Trooper Talbert, Kelly twice informed Trooper Talbert that he and Knight had just come from "somewhere in Maryland."

Thus, contrary to Kelly's contention on appeal, the Commonwealth clearly presented evidence, although entirely circumstantial, "relating to the entry of the marijuana into Virginia and [Kelly's] role in that entry." We find that this evidence reasonably supported the trial court's determination that when he was stopped by Trooper Talbert, Kelly had just transported the drugs from the State of Maryland, into the Commonwealth of Virginia. Indeed, the appellate courts of this Commonwealth have long recognized that circumstantial evidence is not to be viewed in isolation. See Hudson, 265 Va. at 514, 578 S.E.2d at 786; see also Pease v. Commonwealth, 39 Va. App. 342, 360, 573 S.E.2d 272, 280 (2002) (citing Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991); Stamper v. Commonwealth, 220 Va. 260, 273,

257 S.E.2d 808, 818 (1979); Karnes v. Commonwealth, 125 Va. 758, 764, 99 S.E. 562, 564 (1919)). "'While no single piece of evidence may be sufficient, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion."'" Id. (quoting Derr, 242 Va. at 425, 410 S.E.2d at 669). On this basis, and viewing the evidence in the light most favorable to the Commonwealth, we find no error in the trial court's determination that the Commonwealth's evidence proved the essential elements of the crime at issue beyond a reasonable doubt.[1]

Kelly's contention that the Commonwealth's evidence failed to exclude any reasonable hypotheses of innocence does not persuade us differently. Indeed, whether an "alternative hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." Stevens v. Commonwealth, 38 Va. App. 528, 535, 567 S.E.2d 537, 540 (2002) (citations omitted). On this evidence, it is clear that the trial court could have reasonably rejected Kelly's theories in his defense and found him guilty of transporting illegal drugs into the Commonwealth beyond a reasonable doubt. Indeed, the evidence gathered by Trooper Talbert during the stop excluded Kelly's

---

[1] We do not address the rather extensive discussion between the parties regarding whether the trial court properly relied upon its own knowledge of the local geography in reaching its conclusion because we find no evidence in the record reflecting the trial court's consideration of any such evidence.

theories of innocence presented at trial.  See Hudson, 265 Va. at 517, 578 S.E.2d at 787-88.[2]  Thus, the trial court was entitled to infer, upon its reasonable rejection of Kelly's alternative hypotheses of innocence, that Kelly was lying to conceal his guilt, lending further support to its judgment of guilt.  Dowden v. Commonwealth, 260 Va. 459, 469-70, 536 S.E.2d 437, 442 (2000) (citations omitted).

In regard to Kelly's next contention, that the Commonwealth failed to establish he possessed the drugs, we note that "[t]he Commonwealth may prove possession of a controlled substance by showing either actual or constructive possession."  Barlow v. Commonwealth, 26 Va. App. 421, 429, 494 S.E.2d 901, 904 (1998).  To support a conviction based upon constructive possession, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend

---

[2] Furthermore, as noted above, Kelly testified at trial on his own behalf.  During his testimony, Kelly specifically stated that he and Knight stopped at the Stuckey's to get "[s]oda, chips and . . . a lottery ticket."  Kelly did not contend that he obtained the drugs at the Stuckey's, nor did he claim that Knight had the opportunity to obtain the drugs while they were there, so that he could put them in the car without Kelly's knowledge.  Thus, to hold that it is a reasonable hypothesis that the drugs were obtained at the Stuckey's in Virginia would require an exercise in pure speculation outside the record.  Indeed, contrary to the rationale in the concurring/dissenting opinion, no evidence presented at trial supports such a "hypothesis" of innocence.  Moreover, it is well settled that the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence and that "[h]ypotheses not flowing from the evidence must be rejected."  Fordham v. Commonwealth, 13 Va. App. 235, 239, 409 S.E.2d 829, 831 (1991).

to show that the defendant was aware of both the presence and character of the substance and that it was subject to his dominion and control." Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (citation omitted). However, "[t]he Commonwealth is not required to prove that there is no possibility that someone else may have planted, discarded, abandoned or placed the drugs . . . ." Brown v. Commonwealth, 15 Va. App. 1, 10, 421 S.E.2d 877, 883 (1992) (en banc). Further, possession of drugs, whether actual or constructive, need not be exclusive, but may instead be joint. Archer v. Commonwealth, 225 Va. 416, 418, 303 S.E.2d 863, 863 (1983). Moreover, "[a]lthough mere proximity to the contraband is insufficient to establish possession, it is a factor that may be considered in determining whether a defendant possessed the contraband. Ownership or occupancy of the premises on which the contraband was found is likewise a circumstance probative of possession." Archer v. Commonwealth, 26 Va. App. 1, 12, 492 S.E.2d 826, 832 (1997) (citation omitted).

As stated above, in the case at bar, Trooper Talbert testified he noted a strong scent of burnt and green marijuana emanating from Kelly's vehicle. It is undisputed that Kelly was the owner and driver of the car, and appeared nervous during the encounter with the officer. Moreover, Kelly appeared surprised upon hearing he was being arrested for possession of cocaine and, at the police station, Kelly indicated the marijuana was not his before he had been informed there was marijuana in the bag.

- 11 -

Kelly's statements and conduct, in conjunction with his ownership of the vehicle and proximity to the drugs, clearly support the reasonable inference that he knowingly possessed them. Likewise, this evidence provided the trial court with a reasonable basis upon which to reject Kelly's protestations of innocence. We thus find the trial court reasonably determined that the Commonwealth's evidence was sufficient to prove beyond a reasonable doubt that Kelly was guilty of possession of marijuana with the intent to distribute. Accordingly, we affirm the judgment of the trial court as to each of Kelly's convictions.

<u>Affirmed.</u>

Elder, J., with whom Clements, J., joins, concurring, in part, and dissenting, in part.

I concur in the majority's ruling affirming Demetrius Kelly's conviction for possessing marijuana with the intent to distribute. However, I would hold the evidence as found by the trial court was insufficient to prove Kelly imported narcotics into Virginia in violation of Code § 18.2-248.01. Therefore, I respectfully dissent from the portion of the majority opinion affirming Kelly's conviction for that offense.

Code § 18.2-248.01 provides, in pertinent part, that "it is unlawful for any person to transport into the Commonwealth by any means with intent to sell or distribute . . . five or more pounds of marijuana." "[A] violation of Code § 18.2-248.01 occurs at the moment a person transporting illegal substances penetrates the borders of the Commonwealth." Seke v. Commonwealth, 24 Va. App. 318, 325, 482 S.E.2d 88, 91 (1997).

> To justify conviction of a crime, it is insufficient to create a suspicion or probability of guilt. Rather, the burden is upon the Commonwealth to prove every essential element of the offense beyond a reasonable doubt. "The evidence must exclude every reasonable hypothesis of innocence and be consistent only with the guilt of the accused."

Moore v. Commonwealth, 254 Va. 184, 186, 491 S.E.2d 739, 740 (1997) (quoting Powers v. Commonwealth, 211 Va. 386, 388, 177 S.E.2d 628, 629 (1970)) (citations omitted). "Whether an alternative hypothesis of innocence is reasonable is a question

- 13 -

of fact and, therefore, is binding on appeal unless plainly wrong." Archer v. Commonwealth, 26 Va. App. 1, 12-13, 492 S.E.2d 826, 832 (1997). "When [the] facts," viewed in the light most favorable to the Commonwealth, "are equally susceptible to more than one interpretation, one which is consistent with the innocence of the accused, the trier of fact cannot arbitrarily adopt an inculpatory interpretation." Moody v. Commonwealth, 28 Va. App. 702, 706, 508 S.E.2d 354, 356 (1998).

Here, although the circumstances were suspicious, the record does not prove that Kelly possessed the drugs when he entered Virginia from Maryland. Although Kelly twice informed the officer that he and his companion were coming from "somewhere in Maryland," he did not indicate he purchased or possessed drugs at that time. Further, as the majority acknowledges in quoting the ruling below, the trial court expressly found that Kelly re-entered Virginia and "stopped at [a] Stuckey's roadside commercial establishment" "in Accomack County" before he was stopped by the officer. The fact that Kelly possessed the drugs in close proximity to the Virginia-Maryland state line and that he was coming from somewhere in Maryland does not reasonably support an inference that Kelly brought the drugs from Maryland into Virginia any more than it supports an inference that Kelly acquired the drugs after he came into Virginia.

In McCary v. Commonwealth, 36 Va. App. 27, 41, 548 S.E.2d 239, 246 (2001), we held the detective's testimony that McCary admitted bringing cocaine into Virginia from North Carolina provided sufficient evidence to support a Code § 18.2-248.01 conviction. Here, by contrast, Kelly made no such admission to the police. Further, no evidence in the record indicates Kelly possessed the marijuana at the time he entered the Commonwealth, and the trial court expressly found that he stopped his vehicle at a Stuckey's after crossing back into Virginia. Thus, the evidence in the record, as found by the trial court, does not exclude the reasonable hypothesis that appellant obtained the drugs after returning to Virginia, and the trial court's implicit rejection of this hypothesis of innocence was plainly wrong.

Because the evidence was insufficient to exclude all reasonable hypotheses of innocence, I would reverse appellant's conviction for "transport[ing] into the Commonwealth . . . with intent to sell or distribute . . . five or more pounds of marijuana" in violation of Code § 18.2-248.01.

Benton, J., dissenting.

I would reverse both convictions.  I join in the part of Judge Elder's dissenting opinion that "would hold the evidence as found by the trial court was insufficient to prove Kelly imported narcotics into Virginia in violation of Code § 18.2-248.01."  For the reasons that follow, I would also hold the evidence was insufficient to prove Kelly possessed the marijuana in violation of Code § 18.2-248.1.

This conviction was based on circumstantial evidence of constructive possession.  To prove that an accused constructively possessed a controlled substance, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the substance and that it was subject to his dominion and control."  Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984).

> [W]ell established principles apply to testing the sufficiency of circumstantial evidence. . . .
>
> "[I]f the proof relied upon by the Commonwealth is wholly circumstantial, as it here is, then to establish guilt beyond a reasonable doubt all necessary circumstances proved must be consistent with guilt and inconsistent with innocence.  They must overcome the presumption of innocence and exclude all reasonable conclusions inconsistent with that of guilt.  To accomplish that, the chain of necessary circumstances must be unbroken and the

- 16 -

> evidence as a whole must satisfy the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other rational hypothesis and to a moral certainty."
>
> But, circumstances of suspicion, no matter how grave or strong, are not proof of guilt sufficient to support a verdict of guilty. The actual commission of the crime by the accused must be shown by evidence beyond a reasonable doubt to sustain his conviction.

Clodfelter v. Commonwealth, 218 Va. 619, 623, 238 S.E.2d 820, 822 (1977) (citations omitted).

Although Kelly was in close proximity to the marijuana, he was no closer to it than his passenger. "Although both men were riding in the automobile, no evidence or rule of law compels a finding that a person who shares an automobile with another necessarily knows that the other person has contraband or also shares possession of contraband that the other person has in the automobile." Scruggs v. Commonwealth, 19 Va. App. 58, 62, 448 S.E.2d 663, 665 (1994). See also Crisman v. Commonwealth, 197 Va. 17, 20-21, 87 S.E.2d 796, 798-99 (1955) (occupants of an automobile not presumed to know that a small amount of white powder on the floor was heroin); Jones v. Commonwealth, 17 Va. App. 572, 573, 439 S.E.2d 863, 864 (1994) (occupant of automobile not presumed to have awareness of presence and character of small pieces of cocaine on tray between occupant and driver). Furthermore, Code § 18.2-250 could not be clearer:

"Upon the prosecution of a person [for possession of a controlled substance], ownership or occupancy of . . . [a] vehicle upon or in which a controlled substance was found shall not create a presumption that such person either knowingly or intentionally possessed such controlled substance."  The opaque duffel bag in the rear compartment of the vehicle was not proved to be Kelly's.  Indeed, the evidence is equally consistent with the conclusion that the duffel bag belonged solely to Kelly's passenger.

The police officer testified that during the road-side interrogation Kelly denied he had drugs or guns in the vehicle. Despite Kelly's denial, the officer searched the vehicle because he believed he detected the smell of "a sweet deodorizer, and . . . [the] smell [of] burnt marijuana . . . and a greenish tinge of marijuana . . . from outside the car."  No evidence, however, established that Kelly knew or should have known that the odor, which the officer said he detected, indicated the bag contained marijuana.  The officer's interrogation about the marijuana obviously put Kelly on notice that the officer suspected its presence.

Furthermore, the evidence contains innocent explanations for Kelly's surprised reaction to the cocaine accusation, for his statement at the police station concerning the marijuana, and for his denial that the marijuana was his.  The officer testified that, before he searched the vehicle, he "advised

- 18 -

. . . Kelly that [he] smelled marijuana in the car and . . . was going to check the vehicle." After seizing the bag, the officer "thought . . . [it] might have [contained] cocaine and marijuana." The evidence proved Kelly expressed surprise when the officer told him he was "under arrest for trafficking cocaine." That expression of surprise is consistent with Kelly's disbelief that cocaine was in the vehicle and with incredulity that some other unlawful substance existed when the officer had said he smelled marijuana.

The officer's testimony about the events following the arrest did not prove beyond a reasonable doubt Kelly knew marijuana was in the duffel bag in the rear compartment of the vehicle he was driving. He described those events as follows:

> A: Mr. Kelly and Mr. Knight were separated and they were put in the task force office in another room where they couldn't see us and they were being watched at a desk in the office.
>
> Q: Were they separated from one another?
>
> A: They were separated from one another and from the contraband.
>
> Q: They were not in that same room?
>
> A: That's correct, they were not.
>
> Q: Was there any further conversation with the defendant, Mr. Kelly?
>
> A: He sat there in the open room of the stuff. I started taking the items out and placed them on the table to see what they were and kind of walked back and forth between Mr. Kelly and the other room and

> observed what was going on.  Mr. Kelly just
> blurted out, he said, Man, that ain't my
> weed.
>
> Q:  Had you said anything to him about weed?
>
> A:  Not as of yet.  I didn't know it was
> marijuana until we took it out and started
> cutting it open.
>
> Q:  Was he in a position to be able to see
> the "weed"?
>
> A:  No, sir.
>
> Q:  So had he been questioned about
> marijuana?
>
> A:  Yes.

In view of the officer's testimony that he told Kelly he would search the vehicle because he smelled marijuana and that he interrogated Kelly at the road-side about marijuana, Kelly could have reasonably concluded that the bag the officer seized contained marijuana.  Thus, the evidence provides ample bases for Kelly to believe the officers found marijuana and to preemptively declare the marijuana was not his.  In short, the evidence does not support an inference that Kelly knew marijuana was in the vehicle before the officer stopped him.

This evidence proved only suspicious circumstances arising from Kelly's proximity to the duffel bag.  Inferences that are drawn from these suspicious circumstances alone are not sufficient to prove knowing possession of a controlled substance.  No evidence proved Kelly knew the controlled substances were in the bag before the officer opened it and

- 20 -

arrested him.  "Evidence merely that the accused was in the proximity of controlled substances is insufficient . . . to prove that the accused was aware of the presence and character of a controlled substance."  Jones, 17 Va. App. at 574, 439 S.E.2d at 864.

Even if it is probable that the marijuana belonged to Kelly, probability of guilt is insufficient to warrant a criminal conviction.  Crisman, 197 Va. at 21, 87 S.E.2d at 799. Because "evidence must establish the guilt of an accused beyond a reasonable doubt . . . [,] guilt . . . is not to be inferred because the facts are consistent with his guilt, but they must be inconsistent with his innocence."  Cameron v. Commonwealth, 211 Va. 108, 110-11, 175 S.E.2d 275, 276 (1970).  Suspicious circumstances "'no matter how grave or strong, are not proof of guilt sufficient to support a verdict of guilty.  The actual commission of the crime by the accused must be shown by evidence beyond a reasonable doubt to sustain his conviction.'"  Crisman, 197 Va. at 21, 87 S.E.2d at 799 (quoting Powers v. Commonwealth, 182 Va. 669, 676, 30 S.E.2d 22, 25 (1944)).

For these reasons, I would reverse both convictions.

                                    Friday            21st

        February, 2003.


Demetrius Kelly,                                    Appellant,

  against       Record No. 3100-01-1
               Circuit Court No. 00CR200

Commonwealth of Virginia,                          Appellee.


                Upon a Petition for Rehearing En Banc

                      Before the Full Court


        On January 30, 2003 came the appellee, by the Attorney

General of Virginia, and filed a petition praying that the Court

set aside the judgment rendered herein on January 21, 2003, and

grant a rehearing en banc thereof.

        On consideration whereof, the petition for rehearing

en banc is granted, the mandate entered herein on January 21,

2003 is stayed pending the decision of the Court en banc, and

the appeal is reinstated on the docket of this Court.

        The parties shall file briefs in compliance with Rule

5A:35. The appellee shall attach as an addendum to the opening

brief upon rehearing en banc a copy of the opinion previously

rendered by the Court in this matter. It is further ordered that

the appellee

                              - 22 -

shall file with the clerk of this Court twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

Present:  Judges Benton, Elder and Senior Judge Coleman
Argued at Chesapeake, Virginia


DEMETRIUS KELLY

v.    Record No. 3100-01-1

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE SAM W. COLEMAN III
JANUARY 21, 2003

FROM THE CIRCUIT COURT OF ACCOMACK COUNTY
Glen A. Tyler, Judge

> William L. Taliaferro, Jr. (Swartz,
> Rabinowitz, Taliaferro, Lewis, Swartz &
> Goodove, on briefs), for appellant.
>
> John H. McLees, Senior Assistant Attorney
> General (Jerry W. Kilgore, Attorney General;
> Susan M. Harris, Assistant Attorney General,
> on brief), for appellee.


Demetrius Kelly appeals his bench trial convictions for importing narcotics into Virginia with the intent to distribute, Code § 18.2-248.01, and possessing marijuana with the intent to distribute, Code § 18.2-248.1.  He argues the evidence was insufficient to support his convictions.  Finding the evidence insufficient to convict Kelly of importing narcotics into Virginia but sufficient to convict him of possession of marijuana with the intent to distribute, we reverse in part and affirm in part the judgment of the trial court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

-

When the sufficiency of the evidence is challenged on appeal, we review the evidence "in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Bright v. Commonwealth, 4 Va. App. 248, 250, 356 S.E.2d 443, 444 (1997). "In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Watkins v. Commonwealth, 26 Va. App. 335, 349, 494 S.E.2d 859, 866 (1998). We are further mindful that the "credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." Crawley v. Commonwealth, 29 Va. App. 372, 375, 512 S.E.2d 169, 170 (1999).

So viewed, the evidence proved that on March 14, 2000, State Trooper William Talbert stopped the vehicle Kelly was driving for having unapproved tinting on its windows. Kelly was driving southbound on Route 13 in Accomack County. Talbert approached the driver's side of the vehicle and asked Kelly for his identification. The officer testified Kelly appeared nervous and that his hands shook. Talbert detected the odors of both burnt and "green" marijuana.

-

Kelly's license bore a Norfolk address.  Talbert asked Kelly from where he was travelling.  Kelly twice told the officer that he and his passenger, Joey Knight, had been in Maryland.  Knight told the officer they were coming from New York.

Talbert searched Kelly's vehicle and found marijuana seeds, flakes, and chunks throughout the car.  In the back of the vehicle, the officer found a black duffel bag.  Its contents were heavily wrapped in cellophane.  Talbert told Kelly he was under arrest for trafficking cocaine.  Talbert testified Kelly looked "extremely surprised" and stated, "cocaine?"  Talbert transported the two men to the police station and as he placed the duffel bag on a table, Kelly exclaimed, "Man, that ain't my weed."  Talbert testified he did not know the contents of the bag until he cut through the cellophane, that Kelly was not placed where he could observe the contents of the bag, and had not been told the bag contained marijuana.

The bag contained twenty pounds and five ounces of marijuana.  Talbert testified that amount of marijuana was inconsistent with personal use.  Where Talbert stopped and searched Kelly's vehicle was approximately ten miles from the Virginia-Maryland state line.

-

I.

In pertinent part, Code § 18.2-248.01 provides that "it is unlawful for any person to transport into the Commonwealth by any means with intent to sell or distribute . . . five or more pounds of marijuana."  Kelly argues the Commonwealth failed to prove he transported the drugs into Virginia.  We agree.

"[A] violation of Code § 18.2-248.01 occurs at the moment a person transporting illegal substances penetrates the borders of the Commonwealth."  Seke v. Commonwealth, 24 Va. App. 318, 325, 482 S.E.2d 88, 91 (1997).  Although the circumstances were suspicious, the record does not support the trial court's conclusion that Kelly possessed the drugs when he entered Virginia from Maryland.  Although Kelly twice informed the officer that he and Knight were coming from "somewhere in Maryland," he did not indicate he purchased or possessed the drugs at that time and the evidence does not prove that essential element.  The fact that Kelly possessed the drugs in close proximity to the Virginia-Maryland state line and that he was coming from somewhere in Maryland does not reasonably support an inference by the fact finder that Kelly brought the drugs from Maryland into Virginia anymore so than that he acquired the drugs after he came into Virginia.

In McCary v. Commonwealth, 36 Va. App. 27, 548 S.E.2d 239 (2001), we held that the detective's testimony that McCary

-

admitted bringing cocaine into Virginia from North Carolina
provided sufficient evidence to support a Code § 18.2-248.01
conviction.  Id. at 41, 548 S.E.2d at 246.  Kelly made no such
admission to the police, and no evidence in the record indicates
Kelly possessed the marijuana at the time he entered the
Commonwealth.

> To justify conviction of a crime, it is
> insufficient to create a suspicion or
> probability of guilt.  Rather, the burden is
> upon the Commonwealth to prove every
> essential element of the offense beyond a
> reasonable doubt.  "The evidence must
> exclude every reasonable hypothesis of
> innocence and be consistent only with the
> guilt of the accused."

Moore v. Commonwealth, 254 Va. 184, 186, 491 S.E.2d 739, 740
(1997) (citation omitted).  Because neither Kelly nor Knight
admitted obtaining the drugs while out of state, and because no
other evidence indicated Kelly brought the marijuana from
outside Virginia, the evidence was insufficient to support his
Code § 18.2-248.01 conviction.

II.

Kelly argues only that the Commonwealth failed to establish
he possessed the contraband.  We disagree.

"The Commonwealth may prove possession of a controlled
substance by showing either actual or constructive possession."
Barlow v. Commonwealth, 26 Va. App. 421, 429, 494 S.E.2d 901,
904 (1998).

-

> To support a conviction based upon
> constructive possession, "the Commonwealth
> must point to evidence of acts, statements,
> or conduct of the accused or other facts or
> circumstances which tend to show that the
> defendant was aware of both the presence and
> character of the substance and that it was
> subject to his dominion and control."

Drew v. Commonwealth, 230 Va. 471, 473, 338 S.E.2d 844, 845 (1986) (citation omitted).  "The Commonwealth is not required to prove that there is no possibility that someone else may have planted, discarded, abandoned or placed the drugs . . . ." Brown v. Commonwealth, 15 Va. App. 1, 10, 421 S.E.2d 877, 883 (1992) (en banc).  "Although mere proximity to the contraband is insufficient to establish possession, it is a factor that may be considered in determining whether a defendant possessed the contraband.  Ownership or occupancy of the premises on which the contraband was found is likewise a circumstance probative of possession."  Archer v. Commonwealth, 26 Va. App. 1, 12, 492 S.E.2d 826, 832 (1997).

Talbert testified he noted a strong scent of burnt and green marijuana emanating from Kelly's vehicle.  Kelly was the owner and driver of the car and appeared nervous during the encounter with the officer.  Kelly appeared surprised upon hearing he was being arrested for possession of cocaine.  At the police station, Kelly indicated the marijuana was not his before he had been informed there was marijuana in the bag.  Kelly's statements and conduct, his ownership of the vehicle, and

-

proximity to the drugs indicate he knowingly possessed the contraband. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that Kelly was guilty of possession of marijuana with the intent to distribute.

Accordingly, we affirm Kelly's conviction for possession of marijuana with the intent to distribute, and we reverse his conviction for importing narcotics into Virginia with the intent to distribute and dismiss that indictment.

<u>Affirmed in part</u>,
<u>reversed in part</u>
<u>and dismissed</u>.

-

Benton, J., concurring, in part, and dissenting, in part.

I join in the parts of the opinion styled BACKGROUND and ANALYSIS (I); therefore, I concur in reversing the conviction for importing narcotics into Virginia with the intent to distribute. I dissent from ANALYSIS (II).

This conviction was based on circumstantial evidence of constructive possession. To prove that an accused constructively possessed a controlled substance, "the Commonwealth must point to evidence of acts, statements, or conduct of the accused or other facts or circumstances which tend to show that the [accused] was aware of both the presence and character of the substance and that it was subject to his dominion and control." Powers v. Commonwealth, 227 Va. 474, 476, 316 S.E.2d 739, 740 (1984).

> [W]ell established principles apply to testing the sufficiency of circumstantial evidence . . . .
>
> "[I]f the proof relied upon by the Commonwealth is wholly circumstantial, as it here is, then to establish guilt beyond a reasonable doubt all necessary circumstances proved must be consistent with guilt and inconsistent with innocence. They must overcome the presumption of innocence and exclude all reasonable conclusions inconsistent with that of guilt. To accomplish that, the chain of necessary circumstances must be unbroken and the evidence as a whole must satisfy the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other rational hypothesis and to a moral certainty."

-

> But, circumstances of suspicion, no matter how grave or strong, are not proof of guilt sufficient to support a verdict of guilty. The actual commission of the crime by the accused must be shown by evidence beyond a reasonable doubt to sustain his conviction.

Clodfelter v. Commonwealth, 218 Va. 619, 623, 238 S.E.2d 820, 822 (1977) (citations omitted).

Although Kelly was in close proximity to the marijuana, he was no closer to it than his passenger. Furthermore, Code § 18.2-250 could not be clearer: "Upon the prosecution of a person [for possession of a controlled substance], ownership or occupancy of . . . [a] vehicle upon or in which a controlled substance was found shall not create a presumption that such person either knowingly or intentionally possessed such controlled substance." The opaque duffel bag in the rear compartment of the vehicle was not shown to be Kelly's. Indeed, the evidence is equally consistent with the conclusion that the duffel bag belonged to Kelly's passenger. "Although both men were riding in the automobile, no evidence or rule of law compels a finding that a person who shares an automobile with another necessarily knows that the other person has contraband or also shares possession of contraband that the other person has in the automobile." Scruggs v. Commonwealth, 19 Va. App. 58, 62, 448 S.E.2d 663, 665 (1994). See also Crisman v. Commonwealth, 197 Va. 17, 20-21, 87 S.E.2d 796, 798-99 (1955) (occupants of an automobile not presumed to know that a small

-

amount of white powder on the floor was heroin); Jones v. Commonwealth, 17 Va. App. 572, 573, 439 S.E.2d 863, 864 (1994) (occupant of automobile not presumed to have awareness of presence and character of small pieces of cocaine on tray between occupant and driver).

The police officer testified that during the road-side interrogation Kelly denied he had drugs or guns in the vehicle. Despite Kelly's denial, the officer searched the vehicle because he believed he detected the smell of "a sweet deodorizer, and . . . [the] smell [of] burnt marijuana . . . and a greenish tinge of marijuana . . . from outside the car." No evidence, however, established that Kelly knew or should have known that the odor, which the officer said he detected, indicated the bag contained marijuana.

Furthermore, the evidence contains innocent explanations for Kelly's surprised reaction to the cocaine accusation, for his statement at the police station concerning the marijuana, and for denying that the marijuana was his. The officer testified that before he searched the vehicle, he "advised . . . Kelly that [he] smelled marijuana in the car and . . . was going to check the vehicle." After seizing the bag, he "thought . . . [it] might have [contained] cocaine and marijuana." The evidence proved Kelly expressed surprise when the officer told him he was "under arrest for trafficking cocaine." That expression of surprise is consistent with Kelly's disbelief that

-

cocaine was in the vehicle and with incredulity that some other unlawful substance existed when the officer had said he smelled marijuana.

The officer's testimony about the events following the arrest did not prove beyond a reasonable doubt Kelly knew when he was driving that marijuana was in the duffel bag in the rear compartment. He described those events as follows:

> A: Mr. Kelly and Mr. Knight were separated and they were put in the task force office in another room where they couldn't see us and they were being watched at a desk in the office.
>
> Q: Were they separated from one another?
>
> A: They were separated from one another and from the contraband.
>
> Q: They were not in that same room?
>
> A: That's correct, they were not.
>
> Q: Was there any further conversation with the defendant, Mr. Kelly?
>
> A: He sat there in the open room of the stuff. I started taking the items out and placed them on the table to see what they were and kind of walked back and forth between Mr. Kelly and the other room and observed what was going on. Mr. Kelly just blurted out, he said, Man, that ain't my weed.
>
> Q: Had you said anything to him about weed?
>
> A: Not as of yet. I didn't know it was marijuana until we took it out and started cutting it open.
>
> Q: Was he in a position to be able to see the "weed"?

-

A: No, sir.

Q: So had he been questioned about marijuana?

A: Yes.

In view of the officer's statement to Kelly that he would search the vehicle because he smelled marijuana and the officer's interrogation of Kelly about marijuana, the evidence provides ample bases for Kelly to believe the officers found marijuana and to preemptively declare the marijuana was not his.

This evidence proved only suspicious circumstances because of Kelly's proximity to the duffel bag. Inferences that are drawn from these suspicious circumstances alone are not sufficient to prove knowing possession of a controlled substance. No evidence proved that Kelly knew the controlled substances were in the bag before the officer opened it and arrested him. "Evidence merely that the accused was in the proximity of controlled substances is insufficient . . . to prove that the accused was aware of the presence and character of a controlled substance." Jones, 17 Va. App. at 574, 439 S.E.2d at 864.

Even if it is probable that the marijuana belonged to Kelly, probability of guilt is insufficient to warrant a criminal conviction. Crisman, 197 Va. at 21, 87 S.E.2d at 799. Because "the evidence must establish the guilt of an accused beyond a reasonable doubt . . . [,] guilt . . . is not to be

-

inferred because the facts are consistent with his guilt, but they must be inconsistent with his innocence." Cameron v. Commonwealth, 211 Va. 108, 110-11, 175 S.E.2d 275, 276 (1970). Suspicious circumstances "'no matter how grave or strong, are not proof of guilt sufficient to support a verdict of guilty. The actual commission of the crime by the accused must be shown by evidence beyond a reasonable doubt to sustain his conviction.'" Crisman, 197 Va. at 21, 87 S.E.2d at 799 (quoting Powers v. Commonwealth, 182 Va. 669, 676, 30 S.E.2d 22, 25 (1944)).

For these reasons, I would reverse both convictions.