COURT OF APPEALS OF VIRGINIA

Present:    Judges Athey, White and Frucci
Argued at Lexington, Virginia

**PUBLISHED**

ZAKEYIS AVE'ON WOMACK, SOMETIMES KNOWN AS
 ZAKEYIS AVEON WOMACK

                                                OPINION BY
v.    Record No. 2108-23-3    JUDGE CLIFFORD L. ATHEY, JR.
                                                OCTOBER 8, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge

Baker N. Williams for appellant.

Stephen J. Sovinsky, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

On November 30, 2023, following a bench trial, the Circuit Court of the City of Danville

("trial court") convicted Zakeyis Ave'on Womack ("Womack") of carrying a concealed weapon

and sentenced Womack to 30 days in jail with all 30 days suspended along with a $300 fine.  The

trial court also ordered the seized firearm forfeited to the Commonwealth.  On appeal, Womack

contends that because the evidence failed to prove that he constructively possessed the firearm,

the evidence was insufficient to sustain his conviction.  Finding no error, we affirm the trial

court's judgment.

## I. Background[1]

On the night of April 28, 2023, Danville Police Department Officer Land ("Officer Land") observed a white Nissan Maxima driving in the area of Ridge Street in Danville without displaying a front license plate. As a result, Officer Land initiated a traffic stop and as he began to approach the Nissan vehicle, he activated his body-worn camera. While shining a flashlight into the vehicle, Officer Land identified the driver as Cecil Poteat ("Poteat"). Officer Land was also able to identify Womack who was sitting in the front passenger seat. Officer Land then asked Poteat if there was a firearm in the car, which Poteat denied. Upon Officer Land's request, Poteat exited the vehicle while another officer questioned Womack.

This second officer asked Womack whether he had any weapons on his person, to which Womack responded, "no." The second officer then asked Womack for his identification whereupon Womack responded that he did not have his driver's license on his person but did provide the officer with his name. The officer then asked Womack if he was hiding anything under his shirt since Womack was wearing a "puffy coat." In response, Womack "repositioned his feet from where they were to raise his body and showed [the officer] there was nothing under his shirt." When Womack repositioned his feet, the officer "could then see a Glock 19 [handgun] [("Glock")] that was where his foot had been." Upon viewing the Glock handgun, the officer told Womack to "put [his] hands up." Officer Land and the other officers at the scene then removed Womack from the vehicle and placed him in handcuffs. Officer Land then secured

---

[1] On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth, the prevailing party in the circuit court." *Konadu v. Commonwealth*, 79 Va. App. 606, 609 n.1 (2024) (quoting *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)). Doing so requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Id.* (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

the weapon, which was "loaded with one round [in] the chamber and twenty-seven rounds in the extended magazine."

At trial, the Commonwealth also introduced into evidence portions of the body-worn-camera footage of the officer who conducted the search of the vehicle along with Officer Land. Officer Land further testified that he identified the object located on the floorboard in the video to be a Glock handgun which was in the same position as when he observed it for the first time.[2]

At the conclusion of the Commonwealth's case in chief, Womack moved to strike the evidence. In support of his motion, Womack contended that because it was dark outside when Officer Land executed the traffic stop of the vehicle, there was insufficient evidence to prove that Womack "had knowledge of the firearm." The trial court denied the motion to strike.

Kimberly Davis ("Davis"), Womack's mother, then testified in his defense. Davis claimed that the Nissan Maxima in which Poteat and Womack were traveling at the time of the traffic stop was her vehicle. Davis also testified that she owned the Glock firearm which was found under her son's foot and further that she was the person who placed the firearm under the front passenger seat. However, on cross-examination, when specifically questioned about the gun's magazine capacity, Davis was unsure of the number of "rounds" the magazine held, finally stating incorrectly that the handgun held around "9 rounds." Upon further cross-examination, Davis testified that she left the handgun in her vehicle under the front passenger seat because she "was going to Miami." Although Davis further acknowledged that Womack had driven her to the airport, she admitted that "Womack was not 'supposed to be driving [her] car at all."

Womack renewed his motion to strike at the conclusion of all the evidence, asserting that the Commonwealth failed to prove "whether he knew the firearm was in the vehicle." After

---

[2] He also specifically indicated that the Glock was an object intended in design to expel a projectile by means of explosion.

summarizing the testimony and video evidence in the record, the trial court denied the renewed motion to strike, finding that Womack had constructive possession of the handgun that had been "directly under Mr. Womack's feet." The trial court also cited the discrepancy in Davis's testimony pertaining to the number of rounds in the gun's magazine as rendering her testimony not credible. The trial court then convicted Womack of carrying a concealed weapon. Womack appealed.

## II. ANALYSIS

### A. *Standard of Review*

"When an appellate court reviews the sufficiency of the evidence underlying a criminal conviction, its role is a limited one." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "The judgment of the trial court is presumed correct and will not be disturbed unless it is 'plainly wrong or without evidence to support it.'" *Pijor v. Commonwealth*, 294 Va. 502, 512 (2017) (quoting Code § 8.01-680). "Thus, 'it is not for this [C]ourt to say that the evidence does or does not establish [the defendant's] guilt beyond a reasonable doubt because as an original proposition it might have reached a different conclusion.'" *Commonwealth v. Barney*, 302 Va. 84, 97 (2023) (alterations in original) (quoting *Cobb v. Commonwealth*, 152 Va. 941, 953 (1929)).

Instead, the only relevant question for this Court on review "is, after reviewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

B. *The record contains sufficient evidence to support Womack's conviction.*

Womack contends that the Commonwealth failed to introduce sufficient evidence to prove that he possessed the Glock firearm found in the vehicle directly under his feet. However, he does not contend that the Commonwealth failed to prove the actus reus of the offense.[3] Instead, Womack only asserts that the evidence failed to prove that Womack had knowledge of the presence of the firearm sufficient to show he possessed it. We disagree.

"Code § 18.2-308(A)(i) provides, in relevant part, that '[i]f any person carries about his person, hidden from common observation, (i) any pistol, revolver, or other weapon . . . he is guilty of a Class 1 misdemeanor.'" *Morgan v. Commonwealth*, 301 Va. 476, 481 (2022). A conviction for crimes of this nature "may be based solely on evidence of constructive possession." *McArthur v. Commonwealth*, 72 Va. App. 352, 368 (2020) (quoting *Wright v. Commonwealth*, 278 Va. 754, 759 (2009)). To do so "the Commonwealth must present evidence of acts, statements, or conduct by the defendant or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was subject to his dominion and control." *Raspberry v. Commonwealth*, 71 Va. App. 19, 30 (2019) (quoting *Smallwood v. Commonwealth*, 278 Va. 625, 630 (2009)) (applying constructive possession principles to concealed carry violations under Code § 18.2-308).[4] "While the Commonwealth does not meet its burden of proof simply by showing the defendant's proximity to the firearm, it is a circumstance probative of possession and may be considered as a factor in determining whether the defendant possessed the firearm." *Bolden v. Commonwealth*, 275 Va. 144, 148 (2008). Thus, to determine whether Womack had sufficient

---

[3] Both at trial and before this Court, Womack argues solely that the evidence was insufficient to show he was aware of the presence of the firearm. Hence, our review of the facts before us is constrained to evaluating Womack's knowledge of the presence of the firearm beneath his feet.

[4] Both parties agree in their briefing that the principles of constructive possession apply to convictions for violating Code § 18.2-308(A).

knowledge to have constructively possessed the firearm, we "must consider 'the totality of the circumstances disclosed by the evidence.'" *Archer v. Commonwealth*, 26 Va. App. 1, 12 (1997) (quoting *Womack v. Commonwealth*, 220 Va. 5, 8 (1979)).

For instance, in *Bolden*, the Supreme Court of Virginia found that contraband located in plain view within a vehicle and the defendant's proximity thereto was sufficient to support both a conviction for being a felon in possession of a firearm and for concealed possession of a firearm. 275 Va. at 149. There, the defendant and his passenger exited the vehicle and approached the searching officer before the officer reached his vehicle, "dropp[ing] some brown rolling paper and a 'blue Ziploc bag' that appeared to contain cocaine" and resulting in the officer placing the defendant in custody. *Id.* at 146. The searching officer then "looked in the vehicle," and saw a "blue grocery bag in plain view in the driver's seat against the armrest." *Id.* The officer also found "an open knapsack in the vehicle" that "contained a box of sandwich baggies and additional small bags consistent with the one containing the cocaine that [the defendant] had dropped," along with "marijuana and a digital scale," all items that the Commonwealth's expert at trial provided were consistent with drug distribution. *Id.* at 147.

At trial, the officer remarked that the grocery bag's location "was right beside [the defendant] or he was sitting on it." *Id.* The officer then "opened the bag and [the officer] found a loaded .32 caliber handgun inside" but the officer "admitted that he could not determine that a firearm was in the blue bag until he 'picked up the bag and looked inside.'" *Id.* And the Commonwealth further bolstered its position at trial through introducing the testimony of an expert witness, who discussed "the link between the distribution of drugs and the possession of a firearm." *Id.* at 149.

Declining to enumerate a distinction between the charged offenses, the Supreme Court found the circumstances surrounding the firearm's discovery sufficient to establish that the

defendant "was aware of the presence and character of the firearm and it was within his dominion and control." *Id.* at 148. The Court noted that the facts that the defendant "exited the vehicle along with the only other passenger, and . . . attempted to contact the officer before the officer could get to the vehicle" and the expert testimony linking the defendant's possession of items tending to show that he was a drug dealer with his possession of the firearm to be factors that supported finding that he constructively possessed it. *Id.* at 148-49. The Court further reasoned that because the "bag containing the gun was open and obvious to someone looking in the vehicle, and it was located in immediate proximity to where [the defendant] had been sitting," sufficient evidence existed in the record, beyond only the defendant's proximity, to support the conviction under the totality of the circumstances. *Id.* at 149.

At the same time, this Court has cautioned that "[p]roof that the firearm 'was found in . . . a vehicle . . . occupied by the [accused] is insufficient, standing alone, to prove constructive possession.'" *Hancock v. Commonwealth*, 21 Va. App. 466, 469 (1995) (quoting *Powers v. Commonwealth*, 227 Va. 474, 476 (1984)). "Such evidence is probative, but it is only 'a circumstance which may be considered . . . along with the other evidence.'" *Powers*, 227 Va. at 476 (quoting *Gillis v. Commonwealth*, 215 Va. 298, 301 (1974)). For example, in *Hancock*, we found evidence that a firearm was found in the proximity of where the defendant was sitting insufficient to support a concealed possession conviction under Code § 18.2-308.2. *See Hancock*, 21 Va. App. at 468-69. At the time law enforcement arrived at the scene, the defendant "was seated behind the driver's seat" in the car, after the other four passengers had exited the vehicle. *Id.* at 468. The searching officer there that night observed a "revolver on the floorboard under the driver's seat" upon the defendant's "pick[ing] up his feet and exit[ing]." *Id.* In light of these facts, we reasoned that:

> the evidence in this case established that [defendant] was in the
> vehicle at nighttime with four other persons. No evidence proved

- 7 -

> that [defendant] could see the firearm. Indeed, the officer testified
> that he could not see the firearm on the floor when the passengers
> were in the vehicle. Only the streetlight enabled the officer to see the
> firearm as [defendant] exited the vehicle.

*Id.* at 472. Hence, we concluded that because "[n]o evidence established that [defendant] ever held the firearm, saw it, knew it was present, or exercised any dominion and control over it," that his conviction was in error. *Id.*

On brief, Womack asserts that due to some factual similarities, *Hancock v. Commonwealth* bars his conviction. 21 Va. App. at 468-69. In support, he claims that because the search was conducted at night and the firearm was found on the floorboard of the car, the evidence was insufficient to convict him of concealed possession. We disagree.

The evidence relied upon by the trial court here shows that Womack, upon being asked by an officer whether he had a weapon, shifted his feet, revealing the Glock in question. These facts are similar both to what the Supreme Court analyzed in *Bolden v. Commonwealth*, and what was before us in *Hancock v. Commonwealth*. However, there are distinguishing characteristics present in this case that make analogizing to either opinion alone tenuous.

For instance, although both searches occurred at night, the discovery of the firearm, its placement in the searched vehicle, and the number of passengers in the vehicle have a material impact on our analysis. Like *Bolden*, Womack was one of two persons in the car and the firearm "was located in immediate proximity to where [Womack] had been sitting." 275 Va. at 149. But unlike *Bolden*, the firearm was not placed in a container, such as a grocery bag, nor was it in "plain view" to the searching officer, who discovered the firearm only after Womack repositioned his feet. *See id.* at 146. More akin to the facts of this case, in *Hancock*, the officer noted that the firearm in question was "on the floorboard under the driver's seat." 21 Va. App. at 468. There, the only evidence that connected the defendant to the firearm was the searching officer's account that he saw the firearm below the driver's seat upon the defendant's "pick[ing]

- 8 -

up his feet and exit[ing]" the vehicle. *Id.* Thus, at first blush, the attendant circumstances present here appear to be more similar to *Hancock* than *Bolden*, as the searching officer in this case identified the firearm on the floorboard of the car with a flashlight, at the moment Womack—who was seated in the front passenger seat—repositioned his feet, and the officer noted that the firearm was "where [Womack's] foot had been." Hence, comparing these cases simply on those limited facts alone would suggest that the trial court erred in finding that Womack had sufficient knowledge of the firearm's presence. However, both factual differences between the case at bar and *Hancock* and the precedential value of *Bolden* caution against this conclusion.

Foremost, considering the facts present in this case in the light most favorable to the Commonwealth, the circumstances of the discovery of the Glock handgun in this case are distinct from the attendant circumstances which occurred in *Hancock* and would support finding that Womack had sufficient knowledge for constructive possession. *See* 21 Va. App. at 468. Akin to the defendant's use of the grocery bag in *Bolden*, it could be inferred from the discovery of the firearm after Womack's motion that he used his foot to keep the firearm out of sight. 275 Va. at 146. But, unlike the officer searching the vehicle in *Hancock*, upon looking at Womack's feet as he repositioned himself, the officer here saw the firearm right below where Womack's foot was located prior to Womack shifting his foot. *Hancock*, 21 Va. App. at 469. Hence, crediting the officer's observations, although the firearm was initially concealed from his view, it came within plain view due to Womack's motions. *See Bolden*, 275 Va. at 149. Thus, even though the firearm was discovered in a similar manner to that in *Hancock*, viewing it in the light most favorable to the Commonwealth, the fact that the firearm was found near enough to Womack to be "under his feet" supports the trial court's judgment.

Therefore, we find Womack's proximity to the firearm to be "probative [evidence]" that the trial court may have "considered . . . along with the other evidence [in the record]" in convicting

- 9 -

Womack. *Powers*, 227 Va. at 476 (quoting *Gillis*, 215 Va. at 301). From these facts, the trial court could have reasonably concluded that the Glock handgun was "directly under . . . Womack's feet" and that its discovery below his foot could be construed as further evidence of his guilt since it could be further inferred that Womack placed his foot on top of the firearm to conceal it. *See, e.g.*, *Palmer v. Commonwealth*, 14 Va. App. 346, 348-49 (1992) ("It is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct are admissible as evidence of consciousness of guilt, and thus of guilt itself." (quoting *Langhorne v. Commonwealth*, 13 Va. App. 97, 102 (1991))).

Next, contrary to the facts in *Hancock*, the evidence in the record directly contradicts Womack's assertion that he was unaware of the firearm's presence. In *Hancock*, the defendant was one of five individuals, and the only one who remained in the vehicle, while the firearm in question was simply observed "on the floorboard under the driver's seat." 21 Va. App. at 468-69. Hence, the only evidence that connected the defendant in *Hancock* to the firearm was the searching officer's account that he saw the firearm below the driver's seat upon the defendant's "pick[ing] up his feet and exit[ing]" the vehicle. *Id.* at 468. Thus, it was these attendant circumstances that were critical to our ruling that there was "[n]o evidence established that [defendant] ever held the firearm, saw it, knew it was present, or exercised any dominion and control over it." *Id.* at 472. That is not the case here.

Moreover, unlike the defendant in *Hancock*, Womack elicited the testimony of his mother to exculpate himself. But Davis's attempt to exculpate her son by claiming ownership of the vehicle and the firearm was contradicted by her lack of knowledge with respect to the number of rounds available for firing in the handgun's magazine. This contradiction was explicitly cited by the trial court and permissibly relied upon in rejecting Womack's assertion that the firearm had been placed in the vehicle without his knowledge. *See, e.g.*, *Fary v. Commonwealth*, 77 Va. App. 331,

- 10 -

344 (2023) (en banc) ("[T]he factfinder determines which reasonable inferences should be drawn from the evidence, and whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." (quoting *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017))). Hence, the attendant circumstances underpinning *Hancock* are distinguishable from the attendant circumstances here. Thus, we conclude that the facts and applicable authority demonstrate that sufficient evidence existed in the record from which the trial court could find Womack had constructive knowledge of the firearm's presence under his feet. Therefore, we find that the evidence was sufficient and the trial court did not err in convicting him of violating Code § 18.2-308(A).

Finally, we note that *Bolden* is an opinion of the Supreme Court, thus we may not disregard the stare decisis effect *Bolden* has on our decision and on our interpretation of *Hancock*.[5] *See Johnson v. Commonwealth*, 252 Va. 425, 430 (1996) (discussing the effect of stare decisis). "[S]tare decisis 'applies not merely to the literal holding of the case, but also to its *ratio decidendi*— the essential rationale in the case that determines the judgment.'" *Prophet v. Bullock Corp.*, 59 Va. App. 313, 319 (2011) (quoting *Clinchfield Coal Co. v. Reed*, 40 Va. App. 69, 73-74 (2003)). "In other words, 'it is not only the result but also those portions of the opinion necessary to that result by which we are bound.'" *Id.* (quoting *Newman v. Newman*, 42 Va. App. 557, 566 n.1 (2004)). "The phrase *ratio decidendi*, Latin for 'the reason for the decision,' means 'the principle or

---

[5] Note, nothing in this opinion serves to diminish or question the vitality of *Hancock* for future cases. Here, we only distinguish *Hancock* and conclude that its persuasive value is limited to cases involving factual situations beyond the ambit of *Bolden*. In particular, *Hancock*'s conceptual thrust can be categorized as being most persuasive in possession cases where the vehicle searched by law enforcement contains more than one passenger, in relation to another similar authority. *Compare* 21 Va. App. at 468-69, *with Crisman v. Commonwealth*, 197 Va. 17, 21 (1955) (finding in the drug possession context that where the evidence showed that the defendant was one of five occupants of an automobile that was stopped by the police who found on "the floor in front of the rear seat . . . a small quantity of white powder" that this evidence was insufficient to prove constructive possession where the defendant was one of the backseat passengers).

rule of law on which a court's decision is founded.'" *Id.* at 320 (quoting *Ratio Decidendi*, *Black's Law Dictionary* (8th ed. 2004)). Thence, it reasonably follows that "[t]he *ratio decidendi* of an appellate decision is discovered by examining the opinion of the court." *Id.*

Here, in gleaning the ratio decidendi of the Supreme Court's opinion in *Bolden*, we are compelled to conclude that the decision in *Bolden* further supports finding that Womack had constructive knowledge of the presence of the firearm located beneath his feet in the floorboard of the front passenger seat of the vehicle he was occupying. In support of this conclusion, we first note that, similar to the facts in *Bolden*, the searched vehicle contained only two individuals, both located in the front seats, and the firearm was found at night "in immediate proximity to where [the defendant] had been sitting." *Bolden*, 275 Va. at 149. Therefore, the aforementioned reasons for the Supreme Court's decision in *Bolden* "support[s] a finding that [Womack] was aware of the presence and character of the firearm and it was within his dominion and control." *Id.* at 148.[6]

### III. CONCLUSION

In sum, in light of the record before the trial court, we find no error. Though the facts presented in this case may support the application of *Hancock* to reverse the trial court's decision, we note that the Supreme Court of Virginia's opinion in *Bolden*, through stare decisis and factual comparison, supplies ample support for the trial court's judgment. Thus, as *Bolden* most clearly governs the situation before us and *Hancock* is otherwise distinguishable based on

---

[6] This conclusion is further supported by similar Supreme Court of Virginia precedent in the drug possession context. *See, e.g.*, *Adkins v. Commonwealth*, 217 Va. 437, 438-39 (1976) (holding in the context of drug possession that where a bag of marijuana was found on the floorboard in front of the driver's seat in a car containing a driver and two passengers who were asleep on the rear seat that sufficient evidence had been introduced to show the driver had knowledge of the presence of the marijuana at his feet and that he intentionally and consciously possessed it because "[i]t can be reasonably inferred that one of the bags of marijuana found was directly at defendant's feet before he shifted to the passenger seat of the car and [the d]efendant was the only person in the front seat before and after his car was stopped").

the different facts in *Hancock* from those in this case, Womack's argument is unpersuasive, and the trial court's judgment is affirmed.

*Affirmed.*